## GATCH v. THE CITY OF DES MOINES ET AL.

1. **Taxation**: COST OF SEWERS: ASSESSMENT UPON ABUTTING PROPERTY. The expense of the improvement of streets, by grading, paving, macadamizing and laying sidewalks, has been too long imposed upon abutting property in this state, without regard to benefits, to be now called in question; (see *Warren v. Henly*, 31 Iowa, 31;) and the same principle *held* to apply to sewers.

2. ———: ASSESSMENT: RIGHT OF TAX-PAYER TO NOTICE AND A HEARING: CONSTITUTIONAL LAW. The enforcement of a tax levy is a mode of depriving the citizen of his property; and, where the assessment is not specific and imposed upon all persons equally, (as in the case of a poll tax, and the like,) it is necessary for its validity that the tax-payer have due notice of the assessment, and an opportunity to be heard in opposition thereto, to the end that he may not, in violation of constitutional guarantees, be deprived of his property without "due process of law."

3. ———: ———: ———: RULE APPLIED. It is accordingly *held* that the collection of a tax for sewerage purposes, levied upon abutting property in the city of Des Moines, under a city ordinance passed pursuant to chapter 162 of the Acts of the Seventeenth General Assembly, should be enjoined, because neither said act nor said ordinance makes any provision for notice of the assessment to the owners of the property, and t does not appear that the plaintiff herein as one of said owners, either petitioned for the construction of the sewer in question, or otherwise waived his right to notice and a hearing. But it *seems* that it would be sufficient in such a case if the ordinance should provide for proper notice, even though the act of the legislature does not so provide.

*Appeal from Polk Circuit Court.*

THURSDAY, JANUARY 31, 1884.

THIS is an action in equity to enjoin the collection of a sewer assessment, certified by the city of Des Moines to the auditor of Polk county, and by him placed on the tax lists for collection by the county treasurer. There was a trial in the court below, and a decree was entered for the defendant. The plaintiff appeals.

*C. H. Gatch, pro se.*

*Williamson & Kavanagh,* for appellees.

ROTHROCK, CH. J.—On the 16th day of December, 1878, the city of Des Moines adopted an ordinance making provision for a general system of sewerage. It was provided in said ordinance that the city council might by resolution order the construction of a sewer on any street, and that the cost of construction of any sewer, not exceeding three dollars per lineal foot, should be assessed upon the adjacent property, and that all property should be considered adjacent which lies within one hundred and fifty feet of "the street or portion of the street on which the sewer is built—*provided* that, in case of regular city blocks, which are bisected by alleys running parallel to said sewer, then and in that case only such property shall be considered adjacent to a sewer as lies between said alleys and that portion of the street so sewered." By an amendment to the ordinance, it was provided that, whenever the construction of a sewer should be ordered, the cost of which was to be paid by assessment against adjacent property, it should be the duty of the officer superintending the work to keep an accurate account of all the expenses incurred, and to divide the same among the owners of property to be assessed *pro rata*, and "report the same to the committee on special assessments," which committee shall audit and correct said report "if any correction should be necessary, and report the same to the council, which might" order the said special tax to be levied and collected, as provided in sections 478, 479 and 480 of the Code.

On the 16th day of June, 1879, the city, by resolution of the council, ordered that a sewer be constructed from the intercepting sewer on Water street west, on Locust street, to Sixth street, thence north on Sixth street to Chestnut street. The contract for constructing the sewer was let, and, on December 1, 1879, the city council by resolution assessed the entire cost of the sewer, including street crossings, upon the adjacent property. In this assessment the east 150 feet of block H. of Grimmell's addition was assessed as the property of Maria Grimmell. The assessment was certified to the

county auditor for collection by the county treasurer, and the auditor, knowing that the plaintiff herein was the owner of the north 132 feet of said east 150 feet, on his own motion apportioned the aggregate assessment of $759.60 between plaintiff and Maria Grimmell, in the proportion of their ownership of the property.

The foregoing are the facts which we ·deem necessary to state, to the end that the disposition which we may make of the case may be fairly understood. It is proper to state that the case grows out of the same proceedings as did that of *Grimmell v. The City of Des Moines*, 57 Iowa, 144, and we do not deem it necessary to discuss any question which was determined in that case. It was there held that the sewer in question, although constructed upon more than one street, was a unit, and that it was, therefore, but one sewer, and that, because, when it reached Sixth street, it was extended up that street to Chestnut street, did not affect its unity, and that a single assessment therefor is valid. Nor do we deem it necessary or proper to discuss the questions as to the assessment of the property of plaintiff to another, which was afterwards corrected by the auditor. This was at most a mere irregularity which in no manner affected any right of the plaintiff.

A question is also made that the sewer was no benefit to the plaintiff's property. It is a sufficient answer to this proposition to say, that the expense of the improvement of streets by grading, paving, macadamizing, and laying sidewalks, has been too long imposed upon the abutting property in this state, without regard to benefits, to be now called in question. *Warren v. Henly*, 31 Iowa, 31. The argument that an assessment for a sewer is not for an object public in its nature, like the improvement of a street, it appears to us is without merit. Sewerage in a populous city is not a mere private improvement for the convenience of a few persons. It is a matter of the most vital public concern, affecting the health and

1. TAXATION: cost of sewers: assessment upon abutting property.

lives of the inhabitants; and enormous sums are expended in cities for this purpose, the cost of which is everywhere imposed upon the property of the city by some method of taxation.

We come now to the consideration of what appears to us to be the controlling question in the case. It is this: Was it necessary to the validity of the tax that the plaintiff should have had notice and an opportunity to be heard upon the question as to the assessment of the tax against him or his property? No such notice is required by chapter 162 of the Acts of the Seventeenth General Assembly, under which the city assumed to act in its ordinances and proceedings pertaining to the sewer in question. And no such notice is provided for in any ordinance or resolution of the city council. The plaintiff did not petition for the sewer, and he in no manner waived the right to appear and be heard in opposition to the assessment, or to procure the correction of errors therein before the final levy, if he had such right.

<span class="marginnote">2. ——: assessment: right of taxpayer to notice and a hearing: constitutional law: rule applied.</span>

The tax laws of this state, and of the territory of Iowa, have from the beginning made provision and fixed a time within which the tax payer may appear and object to the assessment of his property, and have designated the officers or board that shall decide and hear objections to the assessments as returned by the assessor. Territorial laws of 1838-9, page 403, Sec. 7; Rev. Stat. of Ter. of Iowa, 1843, p. 548, Sec. 7; Code of 1851, p 83, Sec. 484; Acts of 1858, p. 315, Sec's 31, 32; Rev. of 1860, Sec's 739, 740; Code, Sec's 829–831. In all these statutory provisions, the notice is given by the law itself fixing the time when the objections must be made. It is true that, because the tax laws have always contained these provisions, it does not necessarily follow that the right to have notice and appear and object is an absolute right of the citizen. But it unmistakably shows that the legislative branch of the government regarded the right to notice, and to appear and be heard in such cases, to be of controlling im-

portance to the owners of property, as securing them against oppressive and unjust exactions. We have examined the arguments and authorities cited by counsel upon both sides of this question with care, and in the same connection we have had the aid of the arguments and citation of authorities in the case of *The Trustees of Griswold College v. The City of Davenport*, submitted at the same term with the case now under consideration, and our conclusion is that, because of the .want of any. provision for notice in either the statute of the state or ordinances or resolutions of the council, and the want .of any opportunity for a hearing, the assessment must be held to be invalid. · ·

· In *Stuart v. Palmer*, 74 New York, 183, this question was expressly determined. The court in that case say: "I am of opinion that the .constitution sanctions no law impos-ing such an assessment without a notice to, and a hearing or.an opportunity of a hearing by, the owners of the .property to be .assessed. It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard. · It matters not, upon the question of the constitu-tionality of such a law, that the assessment has in fact been fairly apportioned. The constitutional validity of a law is to be tested, not by what has been done under it, but by what may, by its authority, be done. The legislature may prescribe the kind of notice and the mode in which it shall be given, but it cannot dispense with all notice. &#42; &#42; &#42; &#42; .

· "The legislature can no more arbitrarily impose an assessment for which property may be taken and sold, than it can render a judgment against a person without a hearing. It is a rule founded on the first principles of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty or property without an opportunity to be heard in defense of his rights; and the constitutional provision that no person shall be deprived of these 'without due

process of law' has its foundation in this rule. This provision is the most important guaranty of personal rights to be found in the federal or state constitution. It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall be arbitrarily deprived of his life, liberty or property. This the legislature cannot do nor authorize to be done. 'Due process of law' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty or property, whether the proceeding be judicial, administrative or executive in its nature. *Weimer v. Bunburg*, 30 Michigan, 201. This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights."

In Cooley on Taxation, pages 265–6, in discussing this question, the following language is used: " We should say that notice of proceedings in such cases, and an opportunity for a hearing of some description, were matters of constitutional right. It has been customary to provide for them as part of what is " due process of law " for these cases, and it is not to be assumed that constitutional provisions, carefully framed for the protection of property, were intended, or could be construed, to sanction legislation, under which officers might secretly assess one for any amount in their discretion, without giving an opportunity to contest the justice of the assessment."

These views are supported by the following authorities: *Thomas v. Gain*, 35 Mich., 155; *People v. Supervisors of Saginaw*, 26 Mich., 22; *Paul v. Detroit*, 32 Mich., 108; *Powers' Appeal*, 29 Mich., 504; *Philadelphia v. Miller*, 49 Pa. St., 440; *Patten v. Green*, 13 Cal., 325; *State v. Road Com'rs*, 41 N. J., (Law) 83; *County of San Mateo v. Southern Pacific R. R. Co.*, 13 Fed. Rep., 722; (8 Sawyer 238;) *County of Santa Clara v. Southern Pacific R. R. Co.*, 18 Fed. Rep., 385; (9 Sawyer, —.)

We might cite many other authorities directly upon the question under consideration, but the foregoing will be suffi

cient. Proper citations to them will be found in the cases above cited. It is sufficient to say that, in the ordinary methods of assessment and valuation of property for taxation, whether for general or for special purposes, the authorities are very nearly uniform to the effect that it is necessary to the validity of the assessment that the property owner should have notice and an oportunity to be heard.

In the two cases last above cited, the question received the most exhaustive consideration. The cases involved interests of transcendent importance. The court in the last case says: " In view of the general legislation of the states upon the subject from the beginning, recognizing and practically acting upon the principle, and in view of the further fact that no decision of a judge or statement to the contrary has been brought to our notice, we think that the court was fully justified in the *San Mateo* case in expressing the belief that the authorities established beyond all controversy that, somewhere in the proceeding of assessing a tax upon property, where it is necessary to ascertain its amount, character and value as a means of apportionment, under a law or state constitution, at some point before the assessment becomes finally and irrevocably fixed, the statute or state constitution must provide for notice to be given to the owner of the property taxed, and an opportunity be afforded to make objections and be heard upon them."

Aside from authorities which ought to be absolutely conclusive upon the question, there can be no doubt that the rule is founded upon the plainest principles of justice. The arbitrary appropriation of private property without notice, and without an opportunity for a hearing, cannot be defended upon any principle of natural justice, and ought not to be tolerated and upheld by the courts.

It is true that there are some species of taxes to which the rule is not applicable. They embrace a poll tax, license tax, a tax upon occupations, and the like, where the tax is specific, and operates upon all alike. Taxes of these and like kinds

are plainly exceptions to the rule, because a hearing would be of no possible avail. In such cases the law fixes the amount, and there is nothing left to inquire into and determine.

It is urged that the assessment in question falls within this class of taxation, and that, as the assessment is made upon the superficial area of the adjacent property, the amount is ascertained by a mere mathematical calculation. But the very ordinance under which this assessment was made is a sufficient answer to this argument. It is therein provided that the officer superintending the work shall keep an account of the expense incurred, and divide the same among the owners of the property to be assessed, *pro rata*, and report the same to a committee, and the committee shall audit and *correct* said report, and report the same to the council. And the record in this case shows that the assessment was not made to the proper parties as owners; and, when the auditor attempted to make the correction, he included a triangle of ground which it was claimed was part of High street. The assessment is based upon the amount of the property owned by the different parties upon whom the tax is imposed, and it is necessary to inquire into and determine that question, in order to assign to each individual his proper share of the public burden. There are many questions which it may be proper for the property owner to present to the council. He should have the right to present the question whether or not his property, under a proper construction of the ordinance, is subject to the assessment; whether it is all within the requisite limit; and whether the calculation of the superficial area of his lot, made by the officer charged with that duty, is correct. These and many other questions may arise, which require the exercise of judgment and discretion, and upon which it is the right of the owner of the property sought to be assessed to be heard.

It is claimed that the decision of the court below should be sustained upon the authority of *Warren v. Henly, supra.*

It is sufficient to say, in answer to this position, that the question we have now under consideration was not in that case. The question there determined is correctly stated in the head notes to be, whether it is "competent for the legislature, under our state constitution, to authorize municipalities to require streets to be paved, and the costs thereof assessed upon the abutting lots." We are also cited by the counsel for appellee to the case of *Hill v. Wolfe*, 28 Iowa, 585. There is language in the opinion in that case which, when detached, would seem to imply that a tax-payer is not entitled to what is there denominated his "day in court." But in that case the constitutional question which we have in the case at bar was not discussed. The question determined was that the statute requiring the board of supervisors, at their meeting in June, to add to the assessment any taxable property which had been omitted by the assessor, was merely directory as to time, and that a correction made at their meeting in September was valid.

The conclusion which we have reached in this case involves important interests, inasmuch as there are other assessments for taxation authorized by law to be affected by it. In view of this, we deem it proper to say that we do not determine that cities may not make a valid assessment under the law as it now is, without amendment. The law does not provide for notice to be given to the owner, but it does not follow that, by reason of this omission in the laws, a city council, or other board of officers authorized to assess property for taxation, may not, by ordinance or otherwise, provide for some notice of the assessment to be given, that the owner of the property may appear and show cause why the assessment should not be binding and conclusive upon him. All that he can require is that he shall have an opportunity at some time to be heard in the matter before the assessment attaches and becomes a lien upon his property.

REVERSED.