[Decided September 12, 1893; rehearing denied November 13, 1893.]

# WILSON v. CITY OF SALEM.

[S. C. 34 Pac. Rep. 9.]

1. CONSTITUTIONALITY OF CITY CHARTER — NOTICE.— A city charter giving power to improve streets at the expense of the abutting property is not unconstitutional, as depriving persons of property without due process of law, because it does not expressly provide for notice to the property owners; for the power of improving the streets and assessing the property therefor must be exercised subject to constitutional limitations, and notice must be given, notwithstanding the charter does not specially require it, though the city will 'have a broad discretion with reference to the kind of notice and the manner of giving it.

2. FRONTAGE ASSESSMENT FOR STREET IMPROVEMENTS.— An assessment by the front foot is valid and constitutional under a city charter providing that each lot or part thereof shall be liable in whole or in part for the cost, as the council may determine, of making a proposed improvement upon the half-street in front thereof, and that the council may assess upon each lot or part thereof its proportionate share of said costs. The rule for assessing the expense not having been prescribed, the assessment may be made by the front foot in the discretion of the city authorities, if that mode seems to them most likely to determine the actual cost. *King* v. *City of Portland*, 2 Or. 146, cited and approved.

3. STREET IMPROVEMENTS — ESTOPPEL.— Property owners who have had notice and an opportunity to be heard in regard to an assessment for a public improvement, will not be granted relief in a court of equity against such assessment as unequal and unjust, where they failed to appear and make their objection at the proper time. They are estopped by their own conduct from alleging any irregularities in the proceedings; and will be heard only to show that proceedings are totally void.

Marion County: GEO. H. BURNETT, Judge.

This is a suit by J. Q. Wilson and others to restrain the execution of a warrant for the sale of plaintiffs' property for delinquent street assessments, commenced after the work had been completed and accepted by the city, and the property advertised for sale. The case comes here on an appeal from a decree in favor of the plaintiffs given by the court below after sustaining their demurrer to the answer, and defendant refusing to further plead. From the complaint and answer it appears that some time prior

to the fourteenth day of March, 1892, the city of Salem gave notice that on said day it would receive bids for the improvement of Chemeketa Street according to the plans and specifications on file in the city surveyor's office. After the bids had been received, and the probable cost of making the proposed improvement thus ascertained, the recorder, on the fifteenth day of March, 1892, in pursuance of the terms of an ordinance passed in 1891, entitled "An ordinance to provide for notice to parties in relation to assessments for street improvements," duly published, as in the said ordinance provided, the following notice:—

"NOTICE OF ASSESSMENT.

"Notice is hereby given that the common council of the city of Salem, Oregon, will at 8 o'clock P. M. of the fifth day of April, 1892, at the common council chambers at Salem, Oregon, proceed to assess upon each lot, or part thereof, liable therefor, its proportionate share of the cost of grading, graveling, and curbing all that part of Chemeketa Street described as follows: [Here follows a particular description of that portion of the street to be improved, according to the plans and specifications thereof, on file in the office of the city surveyor of Salem, Oregon.] Done by the city of Salem, Oregon, this fifteenth day of March, A. D. 1892.     M. E. GOODELL, Recorder."

At the time and place stated in the notice, the council convened for the purpose indicated, but a quorum not being present, adjourned until the following day, when it proceeded to ascertain and determine, and did then and there determine, the proportionate share of the cost of making the proposed improvement, to be assessed upon each lot, and part thereof, liable therefor, by estimating the same according to frontage, none of the plaintiffs appearing or making any objections thereto.

On the third day of May, 1892, the council passed

ordinance number two hundred and forty-two, for the improvement of the street, in which it declared that it was expedient to grade, gravel, and curb the street, and do all things required by the specifications, except that selected gravel was substituted for screened gravel; that the proposed improvement should be made wholly at the expense of the abutting property, and be assessed upon said property "in proportion to the number of front feet abutting on the street"; and that the probable cost thereof was seven thousand and eighty-four dollars. This ordinance also declares the proportionate share of the cost of making such improvement, assessed upon each lot, or part thereof, liable therefor, as previously ascertained and determined by the council, except that a reduction was made on account of the change in the specifications from screened to selected gravel, and directs the recorder to enter a statement thereof in the docket of city liens. It also recites that Archie Mason is the lowest and best bidder for the work, and awards the contract to him for seven thousand and eighty-four dollars. The improvement was completed in pursuance of this ordinance, and accepted by the city. The validity of this assessment is challenged by the plaintiffs, who are the owners of property abutting upon this street, and who, being residents of Salem, had actual knowledge of said improvement as the same was being made. The decree of the court below was in favor of plaintiffs, and the city appeals. Reversed.

*D'Arcy & Bingham,* and *J. J. Shaw,* for Appellant.

*Reuben P. Boise,* and *Tilmon Ford,* for Respondents.

MR. JUSTICE BEAN delivered the opinion of the court:

The only question necessary to consider on this appeal is one of jurisdiction, and notice to interested parties; for if the city had power to make the improvement, and in doing so violated no express provision of its charter, and

the abutting property owners had notice of, and an oppor-
tunity for, a hearing upon the question as to the propor-
tionate share of the cost of the proposed improvement to
be assessed against their property before the same became
irrevocably fixed, a court of equity will not, after the work
is completed, restrain the enforcement of the assessment
on account of irregularities in the proceedings.   The pro-
visions of the charter of the defendant bearing on the
question before us, in force at the time of this improve-
ment, are as follows:  "Section 46.  The council is author-
ized to improve or repair any street or part thereof when-
ever it deems it expedient, and to declare by ordinance
before doing the same whether the cost thereof, in whole
or in part, shall be assessed upon the adjacent property or
be paid out of the general fund of the city.  Section 47.  If
the council declares that a proposed improvement or
repairs shall be at the cost, in whole or in part, of the
adjacent property, the proposed improvement or repairs
shall be made accordingly; but if it declares that the cost
thereof, in whole or in part, shall be paid out of the gen-
eral fund, such repairs may be made as the ordinance may
provide, and be paid for accordingly.  Section 24.  When-
ever the council of the city of Salem deems it expedient
to improve a street or part thereof, it may proceed to ascer-
tain and determine the probable cost of making such
improvement, and assess upon each lot or part thereof lia-
ble therefor, its proportionate share of such costs.  Sec-
tion 38.  Each lot or part thereof within the limits of a
street   *   *   *   shall be liable for the cost, in whole or
in part, as the council may determine, of making a pro-
posed improvement upon the balance of a half street in
front.  Section 25.  Whenever the probable costs of the
improvements have been ascertained and determined, and
the proportionate share thereof of each lot or part thereof
has been assessed, as provided for in section 24, the coun-
cil must declare the same by ordinance, and direct the

city recorder to enter a statement thereof in the docket of the city liens, as provided for in the next section. Section 11. A sum of money assessed for the improvement of a street cannot be collected until, by order of the council, ten days' notice thereof is given by the recorder by the publication in a weekly or daily newspaper, published in the city of Salem. Such notice must substantially contain the matters required to be entered in the docket of city liens concerning such assessment. Section 12. If, within five days from the final publication of the notice prescribed in section 11, the sum assessed upon any lot or part thereof is not wholly paid to the city treasurer, and a duplicate receipt therefor filed with the recorder, the council may thereafter order a warrant for the collection of the same to be issued by the recorder, directed to the city marshal or other person authorized to collect taxes due the city."

1. These provisions of the charter contain a general grant of power to improve a street at the expense of the abutting property, and the mode of its exercise is not restricted, except as to the manner of making the cost thereof a charge upon the abutting property. The wisdom and expediency of the improvement, the character and cost of the work, the manner of letting the contract or doing the work, are all matters of legislative control, and vested by the charter in the discretion of the council, and upon which the property owners have no constitutional or charter right to be heard: *Paulsen* v. *City of Portland,* 149 U. S. 30 (13 Sup. Ct. Rep. 750); *Spencer* v. *Merchant,* 100 N. Y. 585 (3 N. E. Rep. 682; S. C. 125 U. S. 345; 8 Sup. Ct. Rep. 92). It is contended, however, that the charter is unconstitutional because it makes no provision for notice at any stage of the proceedings to the property owners. We do not understand that it is essential to the validity of a city charter, granting power to improve a street, that it should contain a provision for notice to the property owners. It is enough

if the power is granted in general terms, for, as was said by Mr. Justice BREWER in the recent case of *Paulsen* v. *City of Portland*, "the city is a miniature state, the council is its legislature, the charter is its constitution; and it is enough if, in that, the power is granted in general terms, for when granted, it must necessarily be exercised subject to all limitations imposed by constitutional provisions, and the power to prescribe the mode of its exercise is, except as restricted, subject to the legislative discretion of the council. Thus, in the case of *Gilmore* v. *Hentig*, 33 Kan. 156 (5 Pac. Rep. 781), where a statute authorizes a city to provide for the construction of sewers and drains, and to tax the cost thereof upon the adjacent property owners, but does not require that any notice shall be given to the property owners, it was held that such failure to require notice does not render the statute unconstitutional or void, but notice must nevertheless be given, and the city would have a broad discretion with reference to the kind of notice and the manner of giving the same": See also *Cleveland* v. *Tripp*, 13 R. I. 50; *Williams* v. *Mayor of Detroit*, 2 Mich. 560; *Gatch* v. *Des Moines*, 63 Iowa, 718 (18 N. W. Rep. 310). Under a general grant of power to do work of this kind, the city may by ordinance, as was done in this case, provide for notice to the property owner, and the rule is that if provision is made "for notice to and hearing of each proprietor at some stage of the proceedings upon the question of what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law": *McMillen* v. *Anderson*, 95 U. S. 37; *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation Dist. No. 108*, 111 U. S. 701 (4 Sup. Ct. Rep. 660); *Spencer* v. *Merchant*, 125 U. S. 345 (8 Sup. Ct. Rep. 921). Now in this case notice and an opportunity to be heard were given to the plaintiffs in pursuance of an ordinance of the city providing therefor, and prescribing its terms, before any assessment was made or attempted to be made. They did

not see fit to avail themselves of the opportunity thus afforded, but now seek relief in a court of equity because, as they allege, the assessment as made was unequal and unjust. This they cannot be allowed to do. Having had notice and an opportunity to be heard, they should have appeared before the council and made their objection at the proper time, and not having done so are now bound by the assessment.

2. It is next contended that the assessment in this case is void because made according to frontage. Section 38 provides that each lot or part thereof shall be liable in whole or in part for the cost, as the council may determine, of making a proposed improvement upon the half-street in front thereof; and section 24 provides that the council may assess upon each lot or part thereof liable therefor, its proportionate share of said cost. It thus seems that the rule for estimating the cost of making the improvement in front of a lot or part thereof, and the proportionate share to be assessed thereon, is not prescribed by the charter, but is left to the judgment and discretion of the council. In such case an assessment by the front foot is held valid and constitutional by numerous authorities. And while it may be admitted that such a measure of apportionment seems arbitrary, and likely to operate inequitably in some cases, and liable to other objections of more or less validity, yet, as Judge COOLEY says, "the question is a fairly debatable one whether they are likely to be more serious or more frequent than those which are to be anticipated from the selection of some other rule": Cooley, Taxation, 451. And this question must be deemed settled by the legislative judgment of the council, where no mode is prescribed by the charter: *King* v. *City of Portland*, 2 Or. 146; *Sheley* v. *City of Detroit*, 45 Mich. 431 (8 N. W. Rep. 52); *Norfolk City* v. *Ellis*, 26 Gratt. 224; *Davis* v. *City of Lynchburg*, 84 Va. 861 (6 S. E. Rep. 230); *Farrar* v. *City of St. Louis*, 80 Mo. 379.

3. But whatever may have been the equitable or just mode of assessment under the charter, the one actually adopted by the city, if unwise, was at most only an irregularity which might have been corrected if brought to the attention of the council by plaintiffs at the proper time, but having neglected to do this, we think they are now estopped from objecting to the assessment as actually made. They had notice of the intended assessment, and an opportunity to be heard before it was made, and, not having availed themselves of the opportunity thus given, they are chargeable with knowledge of the method adopted by the city, and, having suffered the work to proceed to final completion and acceptance without protest or objection, and having thus received the benefit of the improvement in the enhanced value of their property, they are now estopped from contesting the validity of the assessment on the ground of any irregularity in the proceedings: 2 Hermann, Estoppel, § 1221; Elliott, Roads and Streets, 420; *Kellogg* v. *Ely*, 15 Ohio St. 64; *People* v. *Utica*, 65 Barb. 9; *Darst* v. *Griffin*, 31 Neb. 668 (48 N. W. Rep. 819); *Loder* v. *McGovern*, 48 N. J. Eq. 275 (22 Atl. Rep. 199 ; 27 Am. St. Rep. 446); *Taber* v. *Ferguson*, 109 Ind. 227 (9 N. E. Rep. 723); *Prezinger* v. *Harness*, 114 Ind. 491 (16 N. E. Rep. 495).

In this case the council had jurisdiction under the charter to make the improvement at the expense of the abutting property, and the plaintiffs had notice and were given an opportunity to be heard before the assessment was made. This being so, it is now too late to take advantage of any irregularity which may have occurred in the proceedings. "The weight of authority," says Judge ELLIOTT, "is very decidedly in favor of the rule that where there is jurisdiction, the property owner who sees the improvement made and offers no objection until after the work has been done, cannot defeat the assessment upon the ground that the proceedings have not been regular":

Elliott, Roads and Streets, 419. If any irregularities or informalities occurred in the proceedings of the council in directing the work, or by including in ordinance number two hundred and forty-two matter that should have been in a separate ordinance, or in changing the specifications from screened to selected gravel after the assessment was made, or in any other particular not affecting the jurisdiction, it would be unjust and inequitable, after the work has been completed and accepted by the city, for a court of equity to restrain the collection of the assessment. The plaintiffs, who are residents of Salem and had actual knowledge that the work was being done, have stood by and seen the street improved for the benefit of their property without objection, and now ought not to be allowed to shift the burden of making the improvement from themselves to the general taxpayers of the city. Assessments for street and other similar improvements are upheld upon the theory that the property within the assessment district is benefited in a special and peculiar manner in a sum equal to the amount assessed against it, and that the owner has thus received a peculiar and pecuniary benefit by the improvement which the citizens generally do not share. Unless, therefore, the proceedings under which the improvement was made are so radically defective as to be totally void, the property owner who stood by and received the benefit with apparent willingness will be estopped to assert the invalidity of such proceedings. "He cannot enjoy the benefits and escape the burden," says MITCHELL, C. J., "unless he interferes or gives notice before the benefit is received": *Foss* v. *Stackhouse*, 114 Ind. 200 (16 N. E. Rep. 501). Whatever plaintiffs' rights may have been in the beginning, they have stood by and acquiesced until the rights of others have intervened, and they must now in equity be deemed to have made an effectual election to waive any and all irregularities in the proceedings under which such rights

have been acquired. This, it seems to us, disposes of the question of the validity of the assessment; for, as soon as it is ascertained that the council had jurisdiction to make the improvement, and the property owner an opportunity to be heard on the question of his assessment, the other objections are mere irregularities which cannot now be urged in a suit to restrain the tax, but which might and should have been raised by some proper proceeding before the work was completed.

It is claimed, however, that the warrant under which plaintiffs' property was advertised for sale was prematurely issued, because no order was ever made by the council authorizing or directing the publication of notice of the assessment as required by section 11 of the charter. The notice required by this section was evidently designed to give the property owner an opportunity to pay the assessment before any costs should be made thereon, and is therefore a condition precedent to the right to order a warrant for the collection of the same to issue. It is not alleged that the notice was not in fact given, and it affirmatively appearing that an order was made by the council directing the warrant for the collection of the assessment to issue as required by section 12, which could only be done after the publication required by section 11, it would of itself probably operate as a ratication. But however this may be, the answer denies the allegations of the complaint as to the want of an order by the council authorizing and directing the notice to be published, and affirmatively alleges that the notice was given in all respects as required by the charter, and as the case is here on a demurrer to the answer, this allegation must be taken as true for the purpose of this opinion, and we must therefore assume that the order authorizing the publication of the notice was in fact made.

It follows from what has been said that the decree of the court below must be reversed and this cause remanded
XXIV. OR.—33.

for further proceedings not inconsistent with this opinion.
REVERSED.

### ON REHEARING.

[ S. C. 34 Pac. 691.]

MR. JUSTICE BEAN delivered the opinion of the court:

A petition for rehearing has been filed, in which it is
contended that the mode of making an assessment for
street improvements is provided by the charter, and there-
fore an assessment by the front foot is invalid and void.
The rule is undisputed that if the charter prescribes a
mode or rule for ascertaining the cost of making a pro-
posed street improvement to be assessed against the ad-
joining property, that mode must be pursued and the
council cannot adopt another.    But from a careful re-
examination of the charter under consideration in this
case, we are still of the opinion that its only effect is to de-
clare that the property shall be liable for the cost of
making a proposed improvement upon the half-street in
front thereof, and to vest the power in the council of
ascertaining and assessing such cost upon each lot or part
thereof.    The charter nowhere prescribes a rule or mode
which the council shall adopt in estimating or ascertain-
ing the cost of making the improvement, and in the ab-
sence of such a provision it is at liberty to adopt the mode
which seems to it most likely to determine the actual cost
of making an improvement in front of the property to be
assessed, and if the mode adopted by the council in the
case was inequitable or unjust it is now too late for the
property owner to complain, as he had an opportunity to
be heard before the assessment was made.    The former
opinion of the court is therefore adhered to, and the cause
will be remanded as therein directed.    REVERSED.