GEORGE W. KIMBALL, Appellant, v. BOARD OF SUPERVISORS OF POLK COUNTY et al., Appellees.

DRAINS: Assessment of Lands Remote From Repair Work. An assessment to defray the cost of cleaning out and repairing a duly established and existing public ditch is not invalid because of the fact that the said work was not performed along and adjacent to the land assessed.

DRAINS: Assessment For Repairs Necessitated by Wrongful Act. Sec. 1989-a21, Code Supp., 1913, in so far as it authorizes the board of supervisors, *without notice to the property owner and without opportunity to be heard,* to determine that a levee was part of a drainage improvement, and that said levee was negligently or wrongfully removed by the landowner or by his agent or employee, and to determine the cost of restoring the levee and to assess such cost to the land, is unconstitutional; and it is quite immaterial that the landowner may *by chance* learn of the proceedings and voluntarily appear.

DRAINS: Assessment Without Notice. An assessment to meet a deficit in the *original* cost of a drainage improvement, or to meet the cost of an *ordinary repair,* may be made, on the basis of the ratio of benefits fixed in the original or initial assessment, *without notice of any kind to the property owner.*

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF, Judge.

JANUARY 15, 1921.

APPEAL from the action of the board of supervisors in levying special assessments against the lands of the appellant for the cost of repairing a drainage ditch.—*Affirmed in part; reversed in part.*

*H. L. Bump,* for appellant.

*Don B. Shaw* and *Oscar Strauss,* for appellees.

FAVILLE, J.—The drainage ditch in question was constructed largely for the purpose of carrying the overflow water from what

is known as "Van Steuben's Creek" to an outlet in Saylor Creek. The headwaters of Van Steuben's Creek are in the higher lands adjacent to and lying above the so-called "Saylor bottoms," or lower lands adjacent to Saylor Creek. These waters flow on steep grades with high velocity, and bring a large amount of silt from the higher lands to the bottom lands. At the head of the Saylor ditch, the Van Steuben Creek comes out upon a broad, alluvial flat, and the silt brought down by the water of the creek is deposited largely at the upper end of the Saylor ditch.

The lands of the appellant, consisting of 80 acres, are traversed by the drainage ditch, which runs the full length thereof along the east side, about two or three rods from the east line. When this open ditch across the appellant's land was originally constructed, there was a berm left between the edge of the ditch and the waste banks created by the dirt removed from the ditch. These waste banks on appellant's land were, under the plans and specifications of construction, designated as "levees." The original plan for the construction of the ditch provided for the placing of these levees on either side of the ditch, to prevent the water, in times of high flood, from flowing upon the adjacent land.

It appears to have been the plan of the engineer that the ditch, as originally constructed, was of sufficient depth to accommodate the ordinary and usual flow of water, but that, in time of excessive flood and unusually high water, the ditch itself might fill up, and then the water would overflow the adjacent berms, and be confined within these "levees."

In course of time, the silt brought down from the adjacent higher lands became deposited in the ditch at and near the place where the higher lands rise abruptly from the bottom lands. The evidence shows that the ditch had gradually "silted up," the amount of this silting varying from nothing, at the lower end of the ditch, to between six and seven feet at the upper end. The head waters flow on steep grades with high velocity, and consequently carry the burden of silt with greater ease and capacity; but, where the grade changes, and the ditch comes upon the alluvial flat or bottom land, the grade flattens out, and the water has consequently a lesser velocity, and the silt borne by it is more

readily deposited.  This condition necessarily results in filling up the channel of the ditch, especially at the upper end.

In addition to this, the appellant had, to a large extent, removed and lowered the levees on either side of the ditch across his farm.  The exact amount of the removal of these levees is not certain, but the appellant admits that he had worked the levees down until they were about half the original height, and had seeded them down.

Under these conditions, the high water overflowed the channel of the ditch, and entered upon the lands lying below those of the appellant.  The exact cause of this overflow and the extent thereof are not very clear from the record.  By some witnesses it is attributed, in a measure at least, to the removal of the levees by the appellant, while others claim that it was due to an obstruction in the ditch, caused by the construction of an interurban railroad.

Be that as it may, on May 12, 1915, a landowner filed a petition with the board of supervisors, stating that the upper part or north end of the ditch was filled up, and that the water ran over the banks and covered the surrounding territory, and asking that an engineer be appointed to make a thorough investigation and report in regard to the repair of the ditch.  Thereupon, an engineer was appointed, who reported to the board of supervisors the conditions in respect to the ditch, and recommended that the same be repaired by clearing and grubbing out trees and brush in the ditch channel, by removal of the silt and all fences across the ditch, and by "the replacing of the levees torn down."  He also reported an estimate of the cost of the proposed repairs.

Thereupon, the board of supervisors, by resolution, approved said report, and ordered that notice should be given of bids for the doing of said work.  Proper notices were duly published, bids were received, a contract was let, and the work of repair was performed.

Thereafter, a schedule of assessments of benefits against the various landowners in said district was filed with said board of supervisors by the engineer, containing the names of the owners of each tract of land consisting of 40 acres or less, the

proportionate rate of assessments, and the total assessment against each tract. No notice of the filing of this report and estimate of assessment was given to the appellant, or to any other landowner in the district.

Thereafter, the appellant appeared before the board of supervisors and filed his written objections to the assessment proposed to be levied against him, and by resolution the board of supervisors disallowed the objections so filed, and levied an assessment against the appellant in the sum of $200, as a general assessment for benefits received by reason of the repairs to said ditch, and an additional assessment of $770.68, as the "cost of rebuilding the levees" across the appellant's land.

The appellant appealed from this action of the board of supervisors to the district court of Polk County, Iowa, where said assessments were each confirmed by decree of the court; and the appeal herein is prosecuted from said decree.

I. From the foregoing it will be observed that there were two separate and distinct assessments levied against the appellant's land, for the cost of repairing and restoring the ditch to its original condition. Both of these assessments were levied by the board of supervisors at the same time, and without any notice to the appellant. One of these assessments was what is known as a "general assessment," being the amount which was assessed and levied against the appellant's lands "in the same proportion that the original expenses and cost of construction were levied and assessed." As we understand the record, when the appellant's lands were assessed originally for the establishment and construction of the ditch, they were classified as provided by Section 1989-a12, Code Supplement, 1913. This section provides that:

1. DRAINS: assessment of lands remote from repair work.

"This classification when finally established shall remain as a basis for all future assessments connected with the objects of said levee or drainage district, unless the board, for good cause, shall authorize a revision thereof."

Section 1989-a21 provides that: "The cost of such repairs or change shall be paid by the board from the drainage fund of said levee or drainage district, or by assessing and levying the cost of such change or repair upon the lands in the same propor-

tion that the original expenses and cost of construction were levied and assessed.''

The appellant does not complain that the board of supervisors, in assessing his lands to the amount of $200, did not proceed in accordance with the provisions of these statutes. The board assessed all of the lands within the district for these repairs, and assessed one 40 of the appellant's lands $120, and the other 40, $80, making a total of $200. Objection was made before the board of supervisors that this assessment was ''unjust, unreasonable, and inequitable.'' It is urged in argument that the lands of the appellant got no benefit from this work of repair, that the ditch was not cleaned out through the entire length of appellant's land; and that it was not placed in its original condition on his property.

We have examined the record with care, and can find no evidence upon which the trial court would have been warranted in reducing this assessment against the appellant's land, or, if so, any evidence whatever as to the extent of the reduction which should have been made. Certainly it was not necessary, in order that an assessment should have been made against the appellant's lands, that the work of repair should have been done upon his land. Such an improvement is a community enterprise. Many lands located within the drainage district are taxed for the improvement, that are not traversed by the ditch.

We are satisfied from the record that the appellant's lands were substantially benefited by the cleaning and repairing of the ditch where it was obstructed, near the higher lands lying above his property. The removal of the silt in the channel of the ditch, thus permitting the free and continuous flow of water within the ditch, was of benefit to him, even though the silt was not deposited in that portion of the ditch which was located upon his land. The entire district received a benefit from the repairing and cleaning of the ditch, and no objection is made that the assessment was not levied as the statute provides.

We find nothing in the record upon which we would be justified in disturbing the decree of the lower court confirming this assessment of $200 against the land of the appellant; and, so far as this item is concerned, the action of the lower court must be affirmed.

II.   In addition to the general assessment of $200, the board of supervisors also assessed and levied a further assessment against all of the plaintiff's land in the lump sum of $770.68,

2. DRAINS: assessment for repairs necessitated by wrongful act.

"for rebuilding of levees." The provision of the statute under which the board of supervisors proceeded in making this assessment and levy is that portion of Section 1989-a21, Code Supplement, 1913, which reads as follows:

"Providing, however, that if the repair is made necessary by the act or negligence of the owner of any land through which such improvement is constructed or by the act, or the negligence of his agent or employee, or if the same is filled and obstructed by the cattle, hogs or other stock of such owner, employee or agent, then the cost thereof shall be assessed and levied against the lands of such owner alone."

After the report of the engineer, returning a schedule of assessment, had been filed with the board of supervisors, the appellant, without any notice, voluntarily appeared before said board, and filed objections to the making of said assessment.

In the district court, these objections were amplified and enlarged upon by the allegations of the appellant's petition. We have repeatedly held that this court will only consider objections that have been properly lodged before the board of supervisors. *Chicago, M. & St. P. R. Co. v. Monona County*, 144 Iowa 171; *Flood v. Board of Supervisors*, 173 Iowa 224; *Pabbeldt v. Hamilton County*, 144 Iowa 476; *Lightner v. Board of Supervisors*, 145 Iowa 95.

The same nicety and preciseness are not required in filing objections before the board of supervisors in drainage proceedings that are required in pleadings in courts of record in this state.   The laws regarding the establishment of drainage districts require that they shall be liberally construed, and we have held that, if the objections filed before the board of supervisors fairly point out the claim made, they should be allowed to stand, and will be heard on appeal. *Lightner v. Board of Supervisors*, 156 Iowa 398; *Flood v. Board of Supervisors*, 173 Iowa 224, 227.

The pleadings in the district court take a somewhat wider range than the objections filed before the board of supervisors, and the arguments presented to our attention cover a somewhat

broader field than the objection before the board would seem to justify. Notwithstanding this,' we are constrained to hold that the objections filed were sufficient to bring to the attention of the board, and to present for our consideration, the question of the validity of this statute to authorize the board of supervisors to assess the cost of rebuilding the levees against his land without any notice to him, or any hearing on the question involved in determining his liability and the extent thereof.

And so treating the question as properly before us, we pass to a consideration of the validity of the portion of the statute in question. Without dispute, the evidence shows that, when the ditch was originally constructed across the appellant's lands, the dirt which was excavated was thrown out on each side of the ditch, and that which ordinarily constitutes waste banks was used as levees. The engineer testified that these so-called levees were considered as a part of the ditch, and that the specifications of the original ditch called for their construction as a part thereof. This was doubtless due to the peculiar situation surrounding the construction of this ditch. Under ordinary and usual conditions, the ditch had sufficient depth to carry the water, but in flood time, the water would go out of its bank, and these levees were so constructed as to retain the water at these exceptional times of flood.

The undisputed evidence shows that the appellant leveled down these levees through his lands. He testified that he had worked them down to about half their original height; that he had seeded them down, and made pastures out of them: and other witnesses say that they were even lower than as testified to by the appellant. There is no dispute of the fact that the levees were restored to their original condition across the appellant's land, nor is there any conflict in the evidence that the actual cost of rebuilding these levees was the sum assessed against the appellant's lands, to wit, $770.68. The record also shows that no notice of any kind was ever served on the appellant at any stage of these proceedings, and that his appearance before the board of supervisors and the filing of objections by him were wholly voluntary on his part.

Upon this state of the record, we are squarely confronted with the question as to whether or not the portion of the statute

in question can be upheld. We have had occasion heretofore to pass upon certain sections of this statute, but as to the particular question here presented, we have not. In *Bloomquist v. Board of Supervisors,* 188 Iowa 994, we said:

"Inasmuch as we hold the case to be controlled by the sections pertaining to new improvement, rather than by Section 1989-a21, as pertaining to mere repair, we have no occasion to decide whether, under the latter section, the plaintiffs would have been entitled, as a matter of right, to a notice of final hearing thereunder. For the time being, we are not wholly agreed upon that particular question."

The statute provides that the cost of repair caused by the negligent act of the owner of any land through which such improvement is constructed, or by the act or the negligence of his agent or employee, or if the same is filled and obstructed by the cattle, hogs, or other stock of such owner, employee, or agent, shall be *assessed and levied* against the lands of such owner alone.

Assessments are special and local impositions upon property in the immediate vicinity of an improvement for the public welfare, which are necessary to pay for the improvement, and are made with reference to the special benefit which such property derives from the improvement. *Palmer v. Stumph,* 29 Ind. 329; *Holley v. County of Orange,* 106 Cal. 420 (39 Pac. 790); *Lima v. Cemetery Assn.,* 42 Ohio St. 128; *Taylor v. Palmer,* 31 Cal. 240.

A local assessment can only be levied on land. It cannot be made a personal liability of the taxpayer, as can a tax. *Town of Macon v. Patty,* 57 Miss. 378 (34 Am. Rep. 451). We discussed this subject at length in *Munn v. Board of Supervisors,* 161 Iowa 26, 36.

While the board of supervisors is authorized by this section to "assess and levy" a sum against the lands of the owner as the cost of repairing the levees claimed to have been destroyed by the owner, we think this differs in several respects from what might properly be called an assessment.

Proceeding under this statute, the board of supervisors is required to ascertain and determine the following propositions of fact:

1. That the levees in question were constructed as a part of the drainage improvement, and that the drainage district had acquired a right of user therein.

2. That it was necessary to repair and restore the same.

3. That such repair was made necessary by the act or negligence of the landowner, or by the act or negligence of his agent or employee.

4. The cost to the drainage district of restoring these levees.

If any of these material facts are not found by the board of supervisors, it would not be authorized, under the statute, in assessing and levying the cost of repair against the lands of the owner.

It will be observed that these are fact questions, which must be found and determined by the board of supervisors, in some manner sufficient at least to justify its action. The real question raised on this appeal, and the one which we are called upon to decide, is whether or not these provisions of the statute in question are valid, and whether such alleged assessment can be made by the board of supervisors without any notice to the landowner. Or, in other words, are these provisions of the statute violative of rights guaranteed by the Federal and state Constitutions?

This question should not be confused with the question of the right of the board of supervisors, under this same section of the statute, to assess the cost of repairs on a drainage ditch against the lands throughout the district generally "in the same proportion that the original expenses and cost of construction were levied and assessed."

3. DRAINS: assessment without notice.

Has the appellant had his day in court on the questions involved in the determination by the board that he shall be assessed the cost of repairing the levees because of his negligent act? We think it is apparent at once that *this* assessment for the cost of restoration of levees is so different in its character that it cannot be regarded as in the same category as the assessment for benefits in the same proportion as the original assessment. The appellant might well know that, his lands having once been assessed, and the classification thereof having been fixed, there-

after general repairs on the ditch, under the statute, could be assessed against him on the basis of the original classification, and in proportion thereto. He has had his notice and hearing on the question of fixing the classification and basis for his assessment, and, as we have held, is bound to know that, if repairs are made, he will be assessed in that proportion. But when, where, and in what manner has he had any notice whatsoever of any proceeding that would fix the basis or the right of a so-called ''assessment'' against him for damages caused to the improvement by reason of his negligent act? If this statute can be upheld, then the board of supervisors is clothed thereby with the absolute and arbitrary power to find that the landowner has been guilty of an illegal act, to investigate and ascertain the extent of the damages caused thereby, and to place a lien against his land for the amount of such damages, all in an exparte proceeding.

As we have before stated, the determination of the board of supervisors in regard to the amount that should be paid by the appellant for the restoration of the levees which he had removed is not a tax, nor do we regard it as in the nature of an assessment, within the proper meaning of that term. It is nothing more nor less than a judicial determination of the fact of a negligent or willful act on the part of the landowner, and the extent and amount of damages caused thereby. Even if it should come within the definition of an assessment, the appellant would have been entitled, at some stage of the proceedings, to a notice that he was to be charged in this manner. As we have heretofore said, the notice of the classification of his lands for general benefits cannot possibly be construed as bringing him within the jurisdiction of the board of supervisors for the purpose of making this extraordinary and unusual so-called ''assessment.''

In Cooley on Law of Taxation (1st Ed.) 266, it is said:

''We should say that notice of proceedings in such cases, and an opportunity for a hearing of some description, were matters of constitutional right. It has been customary to provide for them as part of what is 'due process of law' for these cases; and it is not to be assumed that constitutional provisions, carefully framed for the protection of property, were intended or

could be construed to sanction legislation under which officers might secretly assess one for any amount in their discretion, without giving an opportunity to contest the justice of the assessment.''

In *Stuart v. Palmer,* 74 N. Y. 183, referring to an assessment of property, the court said:

''It is not enough that the owners may by chance have notice, or that they may, as a matter of favor, have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard.''

The foregoing case is cited with approval by this court in *Gatch v. City of Des Moines,* 63 Iowa 718, as were also the following authorities: *Thomas v. Gain,* 35 Mich. 155; *People v. Board of Supervisors,* 26 Mich. 22; *Paul v. City of Detroit,* 32 Mich. 108; *In re Appeal of Powers,* 29 Mich. 504; *City of Philadelphia v. Miller,* 49 Pa. St. 440; *Patten v. Green,* 13 Cal. 325; *State v. Road Commissioners,* 41 N. J. L. 83; *County of San Mateo v. Southern Pac. R. Co.,* 8 Sawyer (U. S.) 238 (13 Fed. 722); *County of Santa Clara v. Southern Pac. R. Co.,* 18 Fed. 385.

In the *Gatch* case, we said:

''It is sufficient to say that, in the ordinary methods of assessment and valuation of property for taxation, whether for general or for special purposes, the authorities are very nearly uniform to the effect that it is necessary to the validity of the assessment that the property owner should have notice and an opportunity to be heard. * * * Aside from authorities which ought to be absolutely conclusive upon the question, there can be no doubt that the rule is founded upon the plainest principles of justice. The arbitrary appropriation of private property without notice, and without an opportunity for a hearing, cannot be defended upon any principle of natural justice, and ought not to be tolerated and upheld by the courts.''

The instant case, we think, comes squarely within the rule recognized and laid down by this court in the *Gatch* case, and we are not disposed to depart therefrom.

The question was again reviewed by us in *Trustees of Griswold College v. City of Davenport,* 65 Iowa 633. A distinction was recognized between those cases where the determination

of the tax was a mere mathematical calculation, and one in which there is required the exercise of judgment and discretion by the assessing officers; and we held that, in the latter case, a right to notice and an opportunity to be heard is a constitutional right. The same rule was recognized by us in *Auer v. City of Dubuque,* 65 Iowa 650.

No one can dispute the proposition that, under the facts of this case, the board of supervisors was charged, not only with judgment and discretion in placing this so-called ''assessment'' against the property of the appellant, but also with the determination of the facts respecting negligence and cost of repair.

In *Zelie v. City of Webster City,* 94 Iowa 393, we said:

''And it has been held that, when neither the statute nor ordinance provided for notice to the property owner affected by the improvement, the proceedings are void.''

In *Ferry v. Campbell,* 110 Iowa 290, we had under consideration the first collateral inheritance tax law passed by our legislature. Mr. Justice Deemer, speaking for this court, reviewed the authorities, and said:

''Call this tax what you will, it is evident that it deprives or may deprive a citizen of his property without notice and opportunity to be heard.''

In *Beebe v. Magoun,* 122 Iowa 94, we had under consideration the then existing drainage law of this state, and therein declared:

''By 'due process of law,' in a case like this, is meant 'notice and an opportunity of being heard:' and the necessity therefor, as prerequisite to the taking of private property by taxation, is uniformly recognized.''

We also said:

''The statute, in so far as it authorizes the estimation of benefits to lands not abutting on a ditch, and through which it is not to be excavated, and the levy of taxes accordingly for such improvement without notice to the owner, is a clear and palpable invasion of the fundamental law, forbidding the taking of private property without due process of law.''

In the *Beebe* case, we also discussed the proposition that it is not sufficient that the landowner may chance to know of the proceedings, or that he may, as a matter of favor, appear before

the board of supervisors. In *State v. Miller*, 132 Iowa 587, 591, we said:

"But, on plainest principles, due process requires that no tribunal having the power to deprive one person of his property rights for the benefit of another, or of the public, shall proceed to do so arbitrarily: the person who is to suffer the deprivation must have his day in court. This is the law of reason, and the rule of the cases."

As before indicated, we do not think that the procedure for so-called "assessment" of the cost of rebuilding levees destroyed by the negligence of the landowner is, in any proper sense of the term, either the levying of a tax or a special assessment, as defined by law. It is in the nature of a determination of the amount of damages to be recovered for a tort. But even if it could be construed to be a special assessment, there being no provision whatever for any notice to the landowner of the proceeding, under the rule recognized by this court in the cited cases, which has never been departed from, the conclusion is inevitable that this feature of the statute violates well-established constitutional provisions, and is invalid and void.

Other courts have had occasion to pass upon the validity of statutes providing for the assessment of benefits without notice, where the assessment was properly designated as such, and where judgment and discretion rested in the assessing tribunal. It has been uniformly held that statutes permitting such assessments to be made without notice to the landowner are unconstitutional and void.

If such a statute, authorizing a nonjudicial board to determine that a citizen has been guilty of negligence, and the extent of damages caused thereby, and conferring the right on a board of supervisors to levy and assess such damages as a lien against his land, without any notice to him, or any hearing or trial, is valid, then indeed is such a tribunal vested with power far exceeding that possessed by the courts. Not only, under this statute, is the board of supervisors authorized to levy such damages against the lands of the owner for his own negligent act, but also for the negligent act of his agent or employee. This also necessarily involves a determination of the fact of agency and the extent, power, and scope of authority of such agent, and

it may involve the question of the contract between employer and employee and the nature, extent, and scope of the authority of the employee, and whether the thing done was within the scope of such employment.

All of these matters will necessarily inhere in the finding and determination of the board of supervisors, and all this, under the statute, is to be ascertained and determined by the board of supervisors, without any notice or hearing whatever to the landowner, whose only legal information of the action and decision of this tribunal is obtained when he discovers the amount adjudged against him on the tax rolls.

If such a statute can be upheld, with such plenary powers conferred upon the board of supervisors, why limit its jurisdiction in such matters to merely questions affecting drainage projects? The board of supervisors, under our statute, has charge and supervision of certain public bridges. If such a bridge were destroyed or injured by the negligent act of a citizen, why could not the board of supervisors be vested with authority to investigate and determine such facts; to ascertain whether the citizen, or some agent or employee of his, had not caused the injury; to ascertain the expense of rebuilding the bridge or repairing the damage; and then to "assess and levy" such expense against the lands of the citizen,—and all this without any semblance of notice or hearing? Such a convenient and expeditious manner of disposing of matters of this character might have its advantages, but it would be viewed with some degree of alarm by those who still retain a respect for our Constitution, and believe that "due process of law" is something more than an idle phrase. If any court of the country, either Federal or state, has ever upheld any statute authorizing such a summary proceeding without either notice or hearing, we have been unable to find the decision. The authorities construing the constitutional guarantees are too numerous and too well known to the profession to require citation or review by us. See 12 Corpus Juris 1188 to 1260.

The constitutional declaration that no state shall "deprive any person of life, liberty or property, without due process of law" is one of the very fundamentals of our supreme law, and "due process of law," in this connection, means at least that

notice and an opportunity to be heard at some stage of the proceedings are absolutely essential. See *Smith v. State Board,* 140 Iowa 66; 12 Corpus Juris 1228.

It is with much hesitancy that courts set aside legislative enactments. It is only when such enactments clearly and plainly infringe upon constitutional provisions that the courts should interfere with the established prerogatives of a co-ordinate branch of the government. We have always recognized and adhered to this salutary rule. *Santo v. State,* 2 Iowa 165; *State v. Fairmont Cr. Co.,* 153 Iowa 702; *Hunter v. Colfax Consol. Coal Co.,* 175 Iowa 245. But when such legislative enactments do violence to constitutional provisions, it is our bounden duty to so declare.

We have no other alternative, in the instant case, than to hold this particular clause which provides "that if the repair is made necessary by the act or negligence of the owner of any land through which such improvement is constructed or by the act, or the negligence of his agent or employee, or if the same is filled and obstructed by the cattle, hogs or other stock of such owner, employer or agent, then the cost thereof shall be assessed and levied against the lands of such owner alone," to be unconstitutional and void.

We deem it proper to call attention to the obvious fact that the legislature has the power, by proper enactment, to provide for the recovery of damages caused to ditches by negligent acts, in a proper proceeding against the wrongdoer; but the enactment of the statute in question transcends legislative power, and clearly contravenes the express provisions of the Constitution.

It necessarily follows that the action of the board of supervisors and the decree of the district court confirming that action, in levying and assessing the sum of $770.68 against the lands of the appellant for "the cost of rebuilding levees" in the drainage district, were without legal authority and void, and the portion of the decree of the district court confirming said alleged assessment is reversed.—*Affirmed in part; reversed in part.*

EVANS, C. J., WEAVER, PRESTON, STEVENS, and ARTHUR, JJ., concur.

DE GRAFF, J., took no part.