DUBUQUE & SIOUX CITY RAILROAD COMPANY, Appellee, v. J. W. MITCHELL as County Treasurer of Pottawattamie County, and the CITY OF COUNCIL BLUFFS, Appellants.

**Municipal corporations:** LIGHT AND WATER: SPECIAL TAXES: DISTRICTS: STATUTE. The statute authorizing certain cities to levy special taxes for light and water purposes against property benefited is not mandatory, in that it requires the council to first define the limits of the district within which the tax may be levied; and therefore a tax levied for that purpose is not void for failure of the council to first fix such limits, but having jurisdiction it will be presumed that the council in good faith deemed the entire property of the city benefited.

**Same:** ESTABLISHMENT OF TAXING DISTRICT: COLLATERAL ATTACK. The duty of outlining or defining the district within which property may be assessed for light and water purposes rests with the city council, and when it has acted the inclusion by it of property

within the district can not be questioned in collateral proceedings or in an action to abate or vacate the tax.

**Same:** PROPERTY SUBJECT TO TAXATION. That portion of a railway situated within the limits of a city, regarded as one district for light and water purposes, is a continuous unbroken piece of property, and as a whole is subject to a tax for light and water purposes, although a portion of it may extend beyond the range of benefits to be derived from the light and water system of the city.

**Same:** LEVY OF TAX: NOTICE. The taxation of property for light and water purposes is not a special assessment but an exercise of the general taxing power applicable alike to all property within the district, of which no notice to property owners is required; so that no constitutional objection to the tax obtains by reason of failure to give notice thereof.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

TUESDAY, MAY 2, 1911.

PROCEEDING in equity to enjoin the collection of certain taxes. Decree as prayed, and defendants appeal.— *Reversed.*

*Clem F. Kimball,* for appellants.

*Tinley & Mitchell* and *Kelleher & O'Connor,* for appellee.

WEAVER, J.—The plaintiff is the owner of a railroad extending from the city of Dubuque to and into the city of Council Bluffs. The corporate territory of the latter city, as shown by the plat hereinafter mentioned, is in area about three miles north and south by two and one-half miles east and west. The plaintiff's railroad enters this territory about midway of its northern boundary, extending thence southward to its passenger and freight stations in the busi-

ness section of the city. On October 7, 1907, this action was begun by filing a petition, alleging, in substance, that for each of the years 1903, 1904, 1905, and 1906 the city of Council Bluffs had, without authority of law, pretended to levy a "water tax" and "light tax" upon the northerly one mile of the plaintiff's railroad within the city limits, of which said void tax the county treasurer was threatening to enforce collection by distress and sale of plaintiff's property. It is further alleged that, while the city maintains a system of public water works and public lighting in certain parts of its territory, none of these accommodations or facilities are in the neghborhood or vicinity of said northerly mile of railroad; that said northerly mile is wholly beyond and without the protection, use, or benefit derived from said utilities, and is therefore not subject to taxation for their construction or maintenance. It is still further alleged that plaintiff has paid in full all taxes levied against it by said city for the several years named, save only the water and light taxes sought to be enforced against the said northerly mile of its road above mentioned, and on the showing thus made it asks that the collection of the unpaid tax be perpetually enjoined. By an amendment to its petition, plaintiff avers that the enforcement of the collection of said tax is an unconstitutional taking of property without due process of law, and operates as a denial to plaintiff of its right to the equal protection of the law. The defendant denies the claims set forth in the petition and amendment. The cause was tried to the district court upon an agreed statement of facts. This agreement is too long and includes too many minor details to admit of its quotation in full. Much of the matter is covered by the foregoing statement of facts. Such other features of the stipulation as are material we shall condense as much as is possible without obscuring the merits of the controversy. Understanding of the geographical situation will

be aided by reference to the plat appearing in the record as follows:

(Plaintiff's road appears in this plat as the "I. C. R. R." and extends from "A" southerly to "B;" thence more directly south to its "Depots" marked "x.")

Of the substance of the agreements we note the following:

(1) That the city council did, prior to September 1st

in each of the years in question, levy upon the taxable property in Council Bluffs certain taxes for a water fund and certain other taxes for gas and street lighting.

(2) That the resolution making such levies, and each of them, did in terms provide for applying the same to "the taxable property; real and personal, subject to taxation within the limits of the city of Council Bluffs, Iowa," and was prefaced by the declaration that "the tax levy for the year (naming it) upon the taxable property, real and personal, within the limits of the city of Council Bluffs, Iowa, is hereby fixed and determined." No other resolution of the city council for any of said years was passed, fixing the territorial limits of the property covered by said taxes.

(3) That in all said years the city maintained, in its own right or by contract with others, facilities for lighting its streets and for water supply in the vicinity of plaintiff's passenger and freight stations as indicated upon the foregoing plat, and that the space marked in the plat "Big or Spring Lake" is a body of water conveyed to and maintained by the city as a part of its park system.

(4) That the city maintains a fire department provided with chemical engines, the water for which is drawn from the mains of the water works.

(5) That so much of the northerly mile of track aforesaid as does not lie over the waters of Big or Spring Lake is located over agricultural ground, not subdivided into lots of less than ten acres.

(6) That no part of said northerly mile of track is within reach of the fire hose of the city from any water plug thus far provided in said system of water works, nor is any part of it within the area of light furnished by any arc or incandescent light shown on the plat, though the city does at various places maintain tower lights of high power overlooking this portion of the plaintiff's property, but not illuminating it to any material degree.

(7) That for the year 1904 the city tax lists shows

2.22 miles of main track taxed to·the plaintiff company and valued at $9,468, the total tax levy on which was $805.96. For the year 1905 the total mileage so appearing was 4.32, valued at $18,364, with a total levy of $1,546.25, and for the year 1906 there was also listed 4.32 miles of track, valued at $18,572, with a total levy of $1,587.91. Included in this tax for each year was a water tax of five mills and a light tax of four mills. Before bringing this action, plaintiff paid all the taxes so levied on its said property, except an amount equal to the levy for water and light tax upon the assessed valuation of one mile of its said track. This payment was refused on the theory that the northerly mile of its said track was not within the limits of benefit from the water and light service, and therefore not legally subject to taxation therefor.

(8) It is further agreed (subject to plaintiff's objection as to its materiality) that the actual market value of the tracks, buildings, and property of the plaintiff which are actually within the area benefited by the city's water and light service is in excess of $100,000, and is more than the assessed value of all its property within the city limits.

(9) That during the period in question the assessed value of the plaintiff's railroad was fixed by the executive council of the state as follows: For the year 1903, $4,268 per mile; for the year 1904, $4,264 per mile; for the year 1905, $4,251 per mile; for the year 1906, $4,299 per mile. These assessments were duly certified to the board of supervisors, which found or determined the extent or mileage of said railroad within the city as follows: For each of the years 1903 and 1904, two and twenty-two hundredths miles, and for each of the years 1905 and 1906, four and thirty-two hundredths miles. The levy of taxes which appear upon the books of the county treasurer is in each° instance based upon the valuation so made and certified by the executive council.

Upon this showing the trial court found that the northerly mile of plaintiff's railroad within the city of Council Bluffs is "wholly without the limits of benefits and protection" of the light and water works provided by said city, and is therefore not lawfully subject to taxation for such purposes, and decreed perpetual injunction against the collection of the taxes in controversy. The appellee who assumes the burden of the issue upholds the conclusion of the trial court, first, because of the failure of the city to comply with the statute which authorizes the levy of special taxes of this nature, and, second, because this particular northerly mile of railroad is beyond the limits of the public light and water service, and receives no benefit or protection therefrom, and is therefore exempt from taxation for such purpose.

I. The statute authorizing special taxes for water and light service is found in Code, section 894. This section enumerates in several subdivisions the several taxes which

1. Municipal corporations: light and water: special taxes: districts: statute.

a city may levy. Among them are the following: "5.—Water works tax. A tax not exceeding in any one year five mills on the dollar, . . . to pay the expenses of running, operating, and repairing water works owned by the city or town and the interest on any bonds issued to pay all or any part of the cost of construction of said works; but such tax shall not be levied upon property which lies wholly without the limits of the benefit and protection of such works, which limit shall be fixed by the council each year before making the levy." By subdivisions 6 and 7 of the same section, like authority is given to levy tax for gas works and electric light plants owned by the city, and for amounts due or to become due from the city on contracts with individuals or companies for the furnishing of water or light for public use. In each instance such tax is made, subject to the same restrictions as are expressed in the subdivision above quoted.

As will be remembered, it is agreed that the city council did not, "by any prior . . . independent or separate vote or resolution," fix the "limits of the benefit or protection" derived from the water works or city system of public lighting, and for this reason it is claimed that the taxes must be held void and unenforceable.

If the statute is to be considered mandatory and construed as meaning that the fixing of the limits must, by some period of time, precede the voting or ordering of the levy, then the invalidity of the taxes now under discussion will have to be conceded, and the decree of the trial court affirmed. After considerable deliberation, we reach the conclusion that such construction would be unduly technical and permit the mere letter of the statute to nullify its plain spirit and intent. The obvious purpose of this provision is to subject to these taxes that property only which, in the judgment of the city council, receives some degree of benefit or protection from these public facilities thus provided or maintained. It is equally clear that, if the situation is such as to require any districting, it would not do to first assess the tax and thereafter fix the territorial limits of its application, thereby giving rise to endless confusion and opportunities for unfair manipulation; hence the provision that the districting shall precede the levy.

But, let us suppose that the council had, in a single resolution, adopted by a single vote, marked out by definite bounds, a water tax district and levied on all the property therein a water tax of five mills, would the court be disposed to hold the levy void, because the delimitation of the district was not made in a separate resolution previously adopted? We think not, and are disposed to say that such action would not be a substantial departure from the terms of the law. Again, it is easily conceivable that a city may be so situated and so supplied with public facilities for water and light that, in the judgment of its council,

no substantial part of its territory ought to be exempt, and in such case there is no apparent reason why the purpose of the statute would not be fulfilled by treating the entire city as a single taxing district. Under such circumstances there being no occasion for subdividing the city into districts, or restricting the application of the tax to some minor portion of the territory, the failure so to do would not affect the validity of the levy.

If, then, the city has the power, in a proper case, to levy these special taxes upon the city at large, we can not say that its act in this instance was void for want of jurisdiction. We do not undertake to say, as a matter of law, that Council Bluffs is a city which may or may not be properly taxed as a whole for these special purposes. Indeed, we are not prepared to say that such question is one that the court can be called upon to decide. Certainly not in a collateral proceeding. The evidence before us does not attempt to portray or describe the situation in this respect, except as it shows that a part of the northerly mile of plaintiff's railroad runs through agricultural lands, not subdivided into lots of ten acres or less, and that it is not directly served by the water and lighting conveniences of the city. We are bound to presume that the council, having jurisdiction in the matter, acted in good faith, and no reason is shown for setting its action aside because of excess of authority in making the levy.

II. Assuming, then, that the tax levies are not wholly void for any omission of the preliminary steps required by the statute, are they void as against plaintiff because of the exempt character of its property? It is the position of the plaintiff that the statute expressly provides that such taxes "shall not be levied upon property which lies wholly without the limits of the benefits and protection" of the water and light service, and therefore, as the northerly mile of its road does lie without such limits, the city can not lawfully impose this burden upon it. If the statutory pro-

hibition just quoted were unmodified or unlimited by any other language of the enactment, and it were admitted or proved that the taxes in question are levied upon property "lying wholly outside" of the limits of benefits and protection from the system of water works and light plant, then, of course, the point that such taxes are not authorized would be unavoidable. But neither of these conditions can be conceded. True the statute does declare in general terms that property so situated shall not be taxed.

But who is to determine when a given piece of property lies "wholly without the limits of benefit and protection" of these utilities? The statute itself does not attempt to define what is meant by these words. It gives no rule or standard by which the existence of such benefit or protection may be found or admeasured. It does not indicate the extent or degree of benefit or protection which shall suffice to bring the property into the taxable class. Surely it was not intended that this should be left an open question of fact which every property owner could contest in an injunction proceeding, and thereby escape the levy, if able only to show that his lot is not within hose length of a fire plug, or that the street in front of his premises is wholly unlighted. The duty of outlining or defining the district is committed to the city council, and when it has acted we are of the opinion that the inclusion within a taxing district of any given piece of property can not be questioned in a collateral proceeding, or in an action to abate or vacate the tax. It would probably be impossible to create a taxing district in which all property owners would be benefited in like proportion, or in which there may not be those who are benefited in no perceptible degree. The best which can be done is a fair approximation, and if the officer or board to which that function is committed performs it in good faith and keeps within the scope of the power conferred a tax levy based thereon, and other-

2. Same: establishment of taxing district: collateral attack.

wise regular, can not be held void. Moreover, even if we should admit the soundness of plaintiff's argument that, notwithstanding the authority given the city council to create a taxing district, it is still without power to impose these taxes on any property lying wholly outside the limits of benefit, we should still be compelled to hold that upon its own showing of the description of its property, and its own contention that the limits of benefit should be drawn no farther north than about the latitude of point "B" on the plat, the property on which the levy was imposed is not *"wholly* without" such limits.

The plaintiff's railroad within the city is one continuous unbroken piece of property, at least three-fourths of which lies within the area conceded by plaintiff to be subject to taxation. It seeks, however, to segregate the "northerly mile" of its road from that part which is within the conceded taxing limit, or rather it seeks, for the purposes of this particular tax, to have the assessed value of all its property in the city reduced by the value of one mile. For this we think there is no warrant in the statute or in the equities of the situation. To enjoy the immunity provided by the statute, the property exempted must lie "wholly without" the limits of the benefits and protection afforded by the city's water and light service, the determination of which area is left to the city council; and if, as we have above indicated, it is competent for the council to find that all the property in the city reaps some substantial benefit from this service, and to treat the entire city as a single taxing district for its maintenance after the manner or in the method adopted in the present instance, we are bound to treat plaintiff's property, including the northerly mile of its track, as lying wholly within the limits of the taxing district, which is the whole corporate territory. Or, if we adopt the method of the plaintiff and arbitrarily draw a line at the south end of the northerly mile of its

3. SAME: property subject to taxation.

road and treat this as the boundary of the taxable area to the south and the untaxable to the north, we can even then relieve this particular mile of track from the payment of these taxes only by going the rest of the way with counsel and considering this northerly mile of track as a separate and distinct piece of property. The language of the statute shows the anticipation of the Legislature that the drawing of a boundary line of this character would not unlikely affect more or less property lying partly within and partly without the area so prescribed, and to avoid any dispute in such cases it confines the exemption to such property only as *lies wholly outside.* If this was not the legislative intent, then there was no occasion whatever for the use of the word "wholly." But we are not authorized to discard it as meaningless.

Nor is anything so peculiar in railroad property as to remove it from the operation of the statute in this respect. The fact that in assessing a railroad it is given a certain estimated value per mile does not have the effect to make each mile a separate, distinct taxable item. Under our system the assessed value of the road is settled by the executive council of the state, and this assessment or valuation is averaged and distributed among the several taxing districts through which the road passes in proportion of the mileage of such road therein. The assessed value per mile is in each instance the unit of calculation, the number of miles in the district is the multiplier, and from the product of their multiplication is derived the sum or valuation upon which taxes are to be levied. For instance, it is agreed that plaintiff's road within the city of Council Bluffs measures four and thirty-two hundredths miles, assessed for 1906 at $4,299 per mile. This does not mean four and thirty-two hundredths distinct items of taxable property, but (for the purposes of taxation at least) it means a single item of property, which is to be taxed upon a valuation of four and thirty-two hundredths times $4,299. Nor

is there any essential injustice in the rule as applied to the plaintiff's property. In Council Bluffs, as in other large cities, much of the value of the railroads within its borders is in their depots, warehouses, and other terminal facilities. It is conceded in the record that plaintiff's property of this kind is very largely in excess of the entire assessed value of all its mileage within the city, and it is this peculiarly valuable portion of its holdings which is within the conceded area of benefits and protection afforded by the city's water and light service. In a very just sense of the word, this service which benefits and protects the company's terminal facilities, benefits and protects in a substantial sense the entire property of the road which is within the jurisdiction of the municipality providing it.

III. If we correctly construe the appellee's argument, its constitutional objection to the taxes in controversy is based on the thought that they are in the nature of spe-

**4. Same: levy of tax; notice.** cial assessments, and that, before the city council could acquire authority to make the levy, notice of some kind should have been given to the railway company, and in support of this contention we are referred to *Gatch v. Des Moines,* 63 Iowa, 718; *Beebe v. Magoun,* 122 Iowa, 94, and other precedents of that class. But these authorities are not in point, as we apprehend the issue before us. The tax here levied is not a special assessment. Nor is it an attempt to distribute the burden of an item of public expense according to benefits. It is an exercise of the general taxing power, made applicable in like proportion to all property within a given district. So far as the assessment of plaintiff's property is concerned, that matter was settled by the executive council, of which the law gave due notice to all concerned. The right of the city by its council to prescribe the limits of the taxing district was in its nature legislative, and required no notice in advance of its enactment. The levy of the tax is provided for by law, and no authority, state

or federal, has been called to our attention holding that the authority given by statute to levy a general tax can be exercised only upon service of notice on property owners affected thereby. From no point of view, are we able to see that the constitutional question suggested by counsel is involved in this record, and the objection can not be sustained.

We ·conclude that no equitable ground is shown for restraining the collection of the taxes in question, and the decree of the trial court is therefore *reversed*.

EVANS, J., dissenting.