C. P. DEWEY, Appellant, v. THE CITY OF DES MOINES, C. H. DILLWORTH, Treasurer of Polk County, and THE DES MOINES BRICK MANUFACTURING COMPANY.

**Public Improvements:** MUNICIPAL CORPORATIONS: *Courts.* The necessity of making street improvements, is a matter for the exclusive determination of a municipal corporation invested with the power to make such improvements, and when it acts within the authority given and its determination is fairly made, *i e.,* without fraud or oppression, it cannot be interfered with by the courts.

NECESSITY FOR. The necessity for the paving of a street is not to be determined solely by the question of benefit to abutting property, but from all the circumstances, including the use made of the street by the public, generally.

BENEFITS OF. The improvement of a street is a public object which will support a special assessment therefor on abutting property, regardless of the question of benefits to such property.

REVIEW BY COURTS: *Fraud.* The action of a city council in ordering the paving of a street, if not fraudulent in fact, is not rendered

so by the fact that there were but few houses on the part of the street covered by the order, and that the owners of the abutting property objected to the improvement, nor because an inducement to the making of the order was the fact that the street was the main thoroughfare to the State fair grounds, and as such used during the holding of the fairs by a large number of people, both residents of the city and others.

DEFICIENCY JUDGMENT. Under Code, section 478, providing that a charge for public improvements in a city "when assessed shall be payable by the owners at the time of the assessment, personally, and shall also be a lien on the respective lots or parcels of land from the time of the assessment," it is proper, in an action to enforce a special assessment, for the decree to order a general execution against the owner for any balance which may remain unpaid after the property has been exhausted.

SAME: *Constitutional law.* Code, section 478, authorizing a personal judgment against a property owner for the amount of a special assessment for street improvements, is not unconstitutional, as depriving him of his property without due process of law, though he is a non-resident of the state and had no actual notice of the proceedings, and such judgment is valid where the owner has submitted himself to the jurisdiction of the court.

CONTRACTS FOR: *Construction of statute.* Acts, Twenty-second General Assembly, chapter 1, which was approved April 9, and went into effect July 4, 1888, created a board of public works in each city of the first class, and provided that such board should advertise for bids and contract for all public improvements ordered by the city council; such contracts to be subject to the approval of the council. Chapter 5, enacted at the same session, which was approved April 16, and went into effect April 21, 1888, gave such board the power to contract in the name of the city for paving, curbing, and sewering streets, when ordered by the council, which contracts were not to be submitted to the council for approval. *Held,* that the later statute to be passed, though first to take effect, governed, and, hence, such contracts for paving, curbing, and sewering did not require the approval of the council.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

WEDNESDAY, APRIL 7, 1897.

THIS is an action in equity begun in April, 1894, to set aside a special assessment for paving East Grand

avenue, in the city of Des Moines, between Eighteenth street, on the west, and the State Fair Grounds, on the east, upon which street, and between the points named, plaintiff's lots abut. Certificates were issued to the contractors doing the work, and were by them assigned to the defendant the Des Moines Brick Manufacturing Company. The latter company filed an answer and a counter-claim against plaintiff and the lots in question, to foreclose the certificates. Plaintiff replied to the counter-claim, presenting the same facts which were pleaded in the petition. The brick company filed a motion to strike one paragraph of the reply. The parties then agreed that said motion should be treated as a demurrer, and considered as referring also to the portions of the petition which are embodied in the paragraph of the reply assailed. It was also agreed that the allegations of fraud in plaintiff's pleadings should be so changed as to eliminate any charge of fraud in fact. The case was tried, and a decree entered against the plaintiff, and he appeals.— *Affirmed.*

*Gatch, Connor & Weaver* for appellant.

*Guernsey & Baily* for appellee Des Moines Brick Manufacturing Co.

*J. K. Macomber* for appellees City of Des Moines and C. H. Dilworth.

KINNE, C. J.—I. We proceed to a consideration of the questions involved in this appeal in the order in which they are presented by the appellant. The first claim is that the city had no power to pave the street in question at the expense of the abutting property owners, and that the improvement and special assessments were fraudulent, oppressive and void. It is to be remembered that, under the agreement of

the parties, plaintiff does not claim that there was any actual or intentional fraud or collusion on the part of the city council or board of public works, but only fraud and collusion in law, as shown by the facts pleaded. Counsel elaborately argue this question, and present many authorities in support of their claim. We cannot consider in this opinion, in detail, all of the cases cited. We can only determine from an examination of them what the law applicable to the question is, and announce it, with a reference to the cases, and a brief statement of the reasons for our holding. The power of the city council to determine whether such improvements shall be made is undoubted. Indeed, counsel do not dispute it, but they insist that the exercise of such power is subject to review by the courts. The rule of law is that where a municipal body, like a city council, is invested with power to make improvements like those in controversy in this action, the necessity for making such improvements is a matter for the exclusive determination of such body; and when such body acts within the authority given, and its determination is fairly made (that is, without fraud or oppression), it cannot be interfered with by the courts. *City of Muscatine v. Chicago, R. I. & P. R. Co.,* 88 Iowa, 291 (55 N. W. Rep. 100); *Everett v. City of Council Bluffs,* 46 Iowa, 66; *Brewster v. City of Davenport,* 51 Iowa, 427 (1 N. W. Rep. 737); *Coates v. City of Dubuque,* 68 Iowa, 550 (27 N. W. Rep. 750); *City of Burlington v. Quick,* 47 Iowa, 222; *Brown v. Barstow,* 87 Iowa, 344 (54 N. W. Rep. 241); *Des Moines Gas Co. v. City of Des Moines,* 44 Iowa, 509; Dillon, Mun. Corp., section 94. The question then is; did the body act within the power given, and was its determination to make the improvements fairly made; that is, without fraud or oppression? It is insisted that under the facts disclosed in this record, the council acted

fraudulently and oppressively. The facts upon which plaintiff predicates his claim of fraud in law are, in substance, these: That the improvements were ordered at the instance of the directors of the State Agricultural Society, and because they would be of great benefit to said society in holding its annual fairs. It can make no difference as to who instigated the proceedings, as to their legality. The question is, as we shall hereafter see, the necessity for the improvements. Plaintiff alleges, that from the western point where said improvements commence, to the extreme eastern point, at the fair grounds, was a distance of over one mile, and that in that entire distance, there are no buildings fronting upon said street, save four inexpensive houses, and that some of them were not there when the street was ordered paved; that all of the property owners, on both sides of said street, between said points, were opposed to said improvements being made, at their expense, and that there was no necessity therefor, "so far as the property or interests of the persons owning property along the side of the street are concerned." The necessity for the work must be determined from all of the facts and circumstances, and from the public use of the street. Here was a public street, within the limits of a populous city, and it appears from the allegations of the pleadings that it was opened as a public highway by the board of supervisors, in 1886, and prior to the time the territory embracing it, was added to the city; that plaintiff's lots were platted and the plat filed in 1886; that in 1890, this territory became a part of the city, and in 1891, the city council ordered the improvements made; that the street was improved and worked by the proper authorities from 1886 to 1890; that it was used largely by vehicles passing between the main

portion of the city and the fair grounds; that it was
a dirt road, and dusty in dry weather; that large num-
bers of people visit the fair each year, and this street
is and has been the most direct and convenient high-
way to said grounds for wagons, horses, and cattle,
and for persons having them in charge.   It fairly
appears that this street had been a public thorough-
fare ever since it was first opened.   How extensively
it had been used by the public generally, except at
fair times, does not appear.   In the absence of allega-
tions of actual or intentional fraud on the part of the
council, it clearly appears from the foregoing facts
that no improper benefit was contemplated by that
body in its action.   The only benefit arising from the
improvements, aside from that accruing to the abut-
ting lot owners, was that which would accrue to the
general public in having adequate accommoda-
tions on and over this street.   Counsel for appel-
lant seem to measure the necessity for these
improvements, solely by the wants and necessities of
the abutting lot owners.   This is not the true or only
test of such necessity.   If it was, then it may well be
doubted whether half of the streets in the city of Des
Moines would ever be paved, curbed, or sewered.
It is a fact known to all men at all conversant
with such matters that, as a rule, property owners
object to such improvements because they entail a
great expense, which must be borne by them, and the
benefits arising from them accrue, not only to the lot
owners, but likewise to the general public.   In the
absence of allegations to the contrary, it may well be
assumed that this street was used by people from the
country as a means of access and egress to and from the
city.   For ought that appears, it was in constant use by
citizens.   There is no allegation that it was not so
used, and we are not warranted in saying that it was
not, because of the allegation that the improvements

were unnecessary so far as the abutting lot owners were concerned. It appears that the property owners protested against the improvement. It would seem, therefore, that it must have been ordered after a full hearing and consideration. As we have said, it does not appear how much this street was used, except during fair time; nor does it appear to what extent the territory adjacent to the street, but not immediately abutting upon it, is settled or occupied, nor whether the people, if any, living within such territory use this street. Now, the use of the street, whether at fair time or other times, by non-residents, is a public use, and, in a proper sense, just as much for city purposes as its use by people living upon it, or by those living within the territory contiguous to it, or by those who may live in the country and use it in going to and from the business portion of the city. The obligation of the city to maintain its streets in proper repair is no less to non-residents who may use them than it is to residents of the city. Its liability for an injury by reason of its negligence in keeping the street in repair, would be the same in either case. Under all of the facts recited in the petition, we discover no reason for saying that the action and determination of the council was not fairly made, nor does it appear that it was made under such circumstances as that it can properly be said that their action was oppressive. True, it is oppressive in its effect, in the sense that all public improvements which involve the expenditure of large sums of money by property owners are felt to be oppressive; but that is not the oppression which will warrant us in overturning the action of the proper municipal body, which has acted within its powers, and fairly, and without any fraudulent view or intent. Such burdens, when fairly laid, must be borne, and their necessity is not to be determined alone by their effect upon, or the amount of

burden thereby cast upon, the property owner. If, in fact, such improvements be required for the public good, the burden is one necessarily incident to the ownership of property in cities. We have said that the necessity for the improvement is not to be determined alone from its benefit to the abutting lot owners. We do not consider it necessary to enter into an elaborate discussion of the question as to whether or not a special assessment must be based in part, even, upon the idea of a benefit to be actually received by the abutting property. It is sufficient to say that it has been repeatedly held by this court that such improvements of streets is a public object which will support such an assessment, regardless of the fact of whether or not it is a benefit to the abutting property. *Warren v. Henly*, 31 Iowa, 31; *Morrison v. Hershire*, 32 Iowa, 271; *Gatch v. City of Des Moines*, 63 Iowa, 718 (18 N. W. Rep. 310); *City of Muscatine v. Chicago, R. I. & P. Ry. Co.*, 88 Iowa, 291 (55 N. W. Rep. 100). We regard the law upon this question as settled in this state.

II. It is next contended that the contract for paving the street, and the special assessments to pay for said work, were illegal and void, for the reason that the published proposals to bidders for said work were not in substantial compliance with the statute, in that said proposals failed to state the extent of the work, when the work should be begun, and at what time said proposals would be acted upon. To determine this question, it is necessary to first ascertain what statute was in force at the time the improvements in controversy were ordered and contracted for. Chapter 168, Acts Twenty-first General Assembly, which took effect on April 20, 1886, prescribed the manner in which contracts for paving should be let, and provided, among other things, that there should be an advertisement for bids, which should

contain "a description of the kind and amount of work
to be done and material to be furnished, as nearly accu-
rate as practicable." Chapter 1, of the Acts of the
Twenty-second General Assembly, provided for the
creation of a board of public works, and authorized
them to make contracts for public improvements; and
section 5, of the act, provided that the board shall
advertise for bids when the amount of the work is in
excess of two hundred dollars, and expressly provided
that the proposals shall state the amount and different
kinds of material to be furnished, and kind of improve-
ment, and the time and conditions upon which bids
shall be received; also, that it shall not be necessary,
before proposals are published, or bids received, to
determine, specifically, the kind of material to be
used. It is also provided that all contracts made
by the board shall be subject to the approval
of the city council. This law went into effect on
July 4, 1888. Prior to the taking effect of the act
creating the board of public works, chapter 5, of the
Acts of the Twenty-second General Assembly, took
effect (April 21, 1888), which amended chapter 168,
Acts Twenty-first General Assembly, and provided
that the public advertisement for bids should state the
kind and amount of work to be done, and specify the
different kinds of material for which bids should be
received. April 18, 1890, chapter 14, of the Acts of
the Twenty-third General Assembly, took effect.
Section 3, of that act, provided for sealed proposals,
after giving public notice, which was required to state,
"as nearly as practicable, the extent of the work, the
kind of materials to be furnished, when the work
shall be done, and at what time the proposals shall be
acted upon." This act was originally applicable only
to cities acting under special charters. By chapter
12, Acts Twenty-fourth General Assembly, in force
April 5, 1892, chapter 14, Acts Twenty-third General

Assembly, was made applicable to all cities having a population of over four thousand, and hence applied to the city of Des Moines. The resolution of the city council, ordering these improvements made, was passed, May 11, 1891; also, a like resolution, on February 1, 1892. The notice for proposals for this paving was published between February 8, 1892, and February 27, 1892, and the material part thereof, is as follows: "Sealed proposals will be received by the board of public works of the city of Des Moines, at their office in the city hall, until 12 o'clock, noon, February 29, 1892, for paving, with brick, East Grand avenue, from Eighteenth street to the west line of the fair grounds, according to the plans and specifications for said work, now on file in our office. * * *" March 15, 1892, the contract was awarded by said board to J. B. Smith & Co., and a contract was signed by the parties on the same day. Said contract contained the following provision: "It is hereby expressly understood that the above contract shall be approved by the city council before the same shall be binding upon said city." April 15, 1892, said contract was approved by the city council. From the foregoing facts it will be observed that after the passage of the two resolutions by the council, and the publication of the proposals by the board of public works, and the reception of the bids and the making of the contract by the board with Smith & Co., chapter 14 of the Acts of the Twenty-third General Assembly, which had been passed in 1890, and was only applicable to cities acting under special charters, became by virtue of chapter 12, of the Acts of the Twenty-fourth General Assembly, which went in force April 5, 1892, applicable to the city of Des Moines, and that after it was so in force the contract previously made for the improvements by the board of public works was approved by the city council. The question is therefore

presented as to whether the contract for the paving was so completed prior to April 5, 1892, as that it was not affected by the Act of the Twenty-third General Assembly, or must its validity be determined with reference to the provisions of said last-mentioned act? Appellant claims that, as the contract had not been approved by the city council prior to the taking effect of the Act of the Twenty-third General Assembly, it had no binding force as a contract, and that all that had been done amounted simply to a proposition on the part of the contractor, to do the work upon certain terms, and as, before the contract was in fact approved, the prior act was repealed, all the proceedings were ineffective, and the new statute prescribed the conditions under which such street improvements should thereafter be made. It must not be forgotten that chapter 5, of the Acts of the Twenty-second General Assembly, which was in force when the council ordered the work done, when the notice was published, when the bids were received and the contract signed, did not require the contracts of the board of public works for paving to be made subject to the approval of the city council. That act expressly authorized said board to make such contracts in the name of the city; to make a completed contract, which would be binding upon the city without any act of approval of the council. But the same legislature passed the act creating the board of public works, in which act it was provided that all contracts made by the board should be subject to the approval of the city council. This act was approved April 9, 1888, but took effect on July 4, 1888. The other act, which did not require such contracts to be approved by the council, was approved April 16, 1888, and took effect April 21, 1888. It is therefore the later declaration of the legislative will, although it took effect about seventy days earlier than the other act,

We should, if possible, so construe these two acts, as to give both of them force and effect. This may be done by holding that the proper preliminary steps had been taken, and that the board of public works had power to enter into the contract bonding the city for curbing, paving, and sewering, without any approval of the city council. But in case of other contracts, such approval was necessary. The advertisement of the board did, as we have seen, contain the provision that the contract was subject to the approval of the city council. Under the construction we have given to these two statutes, this provision of the contract was wholly unnecessary. Having full power by statute to enter into a contract for this work which would bind the city as well as the contractor, the provision requiring the approval of the city council was contrary to the legislative intent, and inoperative. The fact that thereafter the council did approve the contract in no way affected it. As no approval was necessary, the contract was complete and binding prior to the taking effect of the act of the Twenty-fourth General Assembly, which made the act of the Twenty-third General Assembly applicable to the city of Des Moines. Therefore, said act of the Twenty-third General Assembly is not applicable to the case presented. The advertisement of the board sufficiently complied with the statute applicable thereto.

III.    The decree orders a special execution for the sale of the lots, and provides for the issuance of a general execution against the plaintiff to make any balance which may remain after exhausting the property on the special execution. It is claimed that the statute does not authorize such a decree, and that the liability of the plaintiff ends when his property subject to the assessment has been exhausted in payment of it. We considered this question of personal liability recently, in the case of *Farwell v.*

*Manufac....ing Co.*, 97 Iowa, 286 (66 N. W. Rep. 177), and held that such a decree and personal liability were warranted and authorized by the statute. On reconsideri..g the question in the light of the exhaustive arguments in this case, we are still content with our former holding.

IV. Counsel urge that the imposition of such a personal liability in excess of the value of the property, is in violation of the state and federal constitutions. This same question as to our state constitution was raised and considered in *City of Burlington v. Quick*, 47 Iowa, 226; and it was there held that such personal liability was not in contravention of the constitution, and might be enforced. Reliance is placed upon *Neenan v. Smith*, 50 Mo. 529, and *Taylor v. Palmer*, 31 Cal. 240. Both of these cases were considered in the case cited from 47 Iowa, and held not applicable. *Pennoyer v. Neff*, 95 U. S. 714, was a case involving the question whether a personal judgment could be rendered against a non-resident upon service by publication alone, and it was held it could not be. *Craw v. Village. of Tolono*, 96 Ill. 255, involved the construction of a provision of the constitution of the state of Illinois, materially different from that of our state. Three of the justices dissented from the opinion. Neither of these cases sustain appellant's contention. It is said that plaintiff is a non-resident, that he was not served with notice, and that to render such a personal judgment is taking his property without due process of law. The law under which these proceedings were had, was a public statute, of which all persons interested, whether residents or non-residents, were bound to take notice. He must be presumed to have known that this improvement might be made. He is charged with notice of it, and, if he had any defense to interpose, he should act timely. He is presumed to know that the

statute authorized a personal judgment for the amount of such improvements. Having subjected himself to the jurisdiction of the courts of this state, and invoked their aid, he is in no position to say that, because a personal judgment has been entered against him in conformity with the laws of this state, he is thereby being deprived of his property without due process of law. Without setting out the provisions of the state and federal constitutions relied upon, we may say that they are substantially the same. The supreme court of the United States defines "due process of law" to mean "that there can be no proceeding against life, liberty, or property which may result in the deprivation of either without the observance of those general rules established in our system of jurisprudence for the security of private rights." *Hurtado v. California,* 110 U. S. 536 (4 Sup. Ct. Rep. 111, 292); *Hagar v. Reclamation District,* 111 U. S. 701 (4 Sup. Ct. Rep. 667); *Davidson v. New Orleans,* 96 U. S. 97. In the last case cited it is said: "And lastly, and most strongly, it is urged that the court rendered a personal judgment against the owner for the amount of the tax, while it also made it a charge upon the land. It is urged with force—and some highly respectable authorities are cited to support the proposition—that while, for such improvements as this, a part, or even the whole, of a man's property connected with the improvement may be taken, no personal liability can be imposed upon him in regard to it. If this were a proposition coming before us sitting in a state court, or perhaps in a circuit court of the United States, we might be called upon to decide it; but we are unable to see that any of the provisions of the federal constitution authorize us to reverse the judgment of a state court on that question. It is not one which is involved in the phrase 'due process of law,' and none other is

called to our attention in the present case." *State v. Certain Lands in Redwood County* (Minn.) 42 N. W. Rep. 473. Evidently the judgment is not open to the objection urged, that it is a taking of property without due process of law. There is no force in the claim that plaintiff did not have notice. As we have said, he is bound to know that authorized public improvements may be made, and the courts are always open for the prevention of any wrongful exercise of such power.

We have considered all of the questions argued by counsel, and arrived at the conclusion that the decree of the district court was in all respects proper.— AFFIRMED.