## RICHARDSON PHELPS v. CITY OF MINNEAPOLIS AND OTHERS.[1]

June 1, 1928.

No. 26,884.

**How net bonded indebtedness of Minneapolis is to be determined.**

1. Neither the words "assessed value" nor "assessed valuation," as used in the statute defining net bonded indebtedness, mean "true and full value." They are phrases of contrast and not identity. In determining the net bonded indebtedness of Minneapolis, the ten per cent rate is to be figured on the assessed valuation of the property in said city as finally equalized.

**In determining such bonded indebtedness auditorium bonds are to be deducted.**

2-3. L. 1923, c. 21, providing for deduction of auditorium bonds in determining net bonded indebtedness of Minneapolis, is not repealed by L. 1927, c. 131. The city of Minneapolis does not come within the operation of said L. 1927, c. 131. Repeals by implication are not favored and will not be inferred; nor will a law, general in its application, supersede an earlier act, special in its nature, unless such was the manifest intention of the legislature.

Municipal Corporations, 44 C. J. p. 1117 n. 27; p. 1121 n. 1.
Statutes, 36 Cyc. p. 1071 n. 25; p. 1087 n. 92.

[1]Reported in 219 N. W. 872.

Plaintiff appealed from a judgment of the district court for Hennepin county, Dickinson, J. entered upon an order for judgment on the pleadings denying him an injunction against the sale of permanent improvement bonds of the city of Minneapolis. Affirmed.

*Shaw, Safford, Putnam & Shaw,* for appellant.

*Neil M. Cronin,* City Attorney, and *William H. Morse* and *Thomas B. Kilbride,* Assistant City Attorneys, for respondents.

*C. J. Rockwood,* filed a brief amicus curiae.

HILTON, J.

Appeal from a judgment entered on an order for judgment on the pleadings denying plaintiff a permanent injunction.

Plaintiff, a taxpayer of Minneapolis, sought to enjoin the city and its board of estimate and taxation from selling $1,150,000 of permanent improvement bonds on the ground that said bonds, if issued, will exceed the city's limit of bonded indebtedness. Plaintiff demurred to the defendants' answer, but at the hearing both parties made a motion for judgment on the pleadings and the case was submitted on such motions.

The full and true value of the taxable property in the city of Minneapolis is $932,255,992; the last assessed value thereof is $423,465,169. The limit of the net indebtedness of the city is ten per cent of the last assessed value of all taxable property therein. There are certain city debts which are deductible and not to be considered in arriving at net indebtedness. The contention of plaintiff, and the trial court so held, is that such limit is $42,346,516.90, while the claim of defendants is that the limit of such net indebtedness is ten per cent of the full and true value or $93,225,599.20.

Plaintiff asserts that the present net debt of the city is in excess of the limit and is $43,258,777.05, while defendants' claim is that the present net debt is but $38,563,072.74. The amount of gross outstanding indebtedness ($61,787,272.53) is not in dispute, nor are certain deductible items. The difference in the two claims above referred to results from certain disputed deductions claimed therefrom. To reach the figure claimed by the defendants, there

are deducted from the third last above given figure the following items of indebtedness: (1) Auditorium bonds, $2,646,000; (2) portion of sinking fund applicable to liquidation of deductible bonds, $728,492.77; (3) bonds originally issued against special assessments, which assessments have been subsequently canceled and abated, $935,309.35; (4) portion of so-called "Elwell Bonds" sold but not yet delivered, which when delivered will be general debt of city, $385,902.19.

The trial court held that all of the amounts just above enumerated, except the amount of the auditorium bonds (which he held to be deductible) should be added to the defendants' claim of net indebtedness, thus leaving the net debt at $40,612,777.05. With this holding we agree. This would still leave a margin of $583,739.85 if the proposed bonds are issued.

But two questions are here involved: (1) Should the ten per cent be figured upon the full and true value of the property or upon the assessed value of such property? (2) Are the auditorium bonds deductible?

1. From the admission of Minnesota into the Union in 1858, and until 1906, its constitution provided that "all taxes to be raised in this state shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation and be equalized and uniform throughout the state." In 1906 the constitution was amended so as to provide that "taxes shall be uniform upon the same class of subjects." Art. 9, § 1.

During all the time referred to the legislative enactments relative to the taxation of all unexempt property provided that the same should be assessed at its true and full value, defined to mean "the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained therefor at private sale, and not at forced or auction sale." G. S. 1923, § 1980. Specific instructions to assessors, boards of review and equalization, county auditors, and the state tax commission were contained in the statutes for the carry-ing into effect of this plain mandate of the law. G. S. 1923, §§ 1990,

2034, 2037, 2049 and 2073. As a matter of common knowledge, however, practically no property had ever been assessed for the purposes of taxation at exactly its full and true value. For many decades the valuations placed upon the property in the state, for the purposes of taxation, ranged from 25 to 50 per cent of its full and true value. Report of Minnesota Tax Commission, 1914, p. 17, et seq; 1916, p. 25, et seq. This common and uniform practice was not only known to taxing officials but also to practically all citizens of the state. We take judicial notice of that fact. In re St. P. & N. P. Ry. Co. 34 Minn. 227, 230, 25 N. W. 345; Gurney v. Minneapolis U. Elev. Co. 63 Minn. 70, 73, 65 N. W. 136, 30 L. R. A. 534; State ex rel. Marr v. Stearns, 72 Minn. 200, 218, 75 N. W. 210; Braun v. N. P. Ry. Co. 79 Minn. 404, 412, 82 N. W. 675, 984, 49 L. R. A. 319, 79 A. S. R. 497; 15 R. C. L. 1057, et seq.

Although several attempts were made in the legislature after the constitution was so amended generally to classify property for taxation, it was not until the passage of L. 1913, p. 710, c. 483 (G. S. 1923, § 1993) that the permission for classification became effective and statutory authority thereby given to a system which had grown up in defiance of constitutional and statutory law.

The law just referred to is entitled:

"An act to classify property for taxation purposes and to fix the per cent of 'full and true value' at which property in each class shall be assessed."

It provides in part:

Class 1. Iron ore, etc. "shall be valued and assessed at 50 per cent of its true and full value."

Class 2. Household goods, etc. "shall be valued and assessed at 25 per cent of the full and true value thereof."

Class 3. Live stock, etc. "shall be valued and assessed at 33 1/3 per cent of the true and full value thereof."

Class 3a. Agricultural products "shall be valued and assessed at 10 per cent of the full and true value thereof."

Class 4. All other property "shall be valued and assessed at 40 per cent of the full and true value thereof."

After the passage of the classification statute the duty still devolved upon the assessor to list all property at its true and full value and also to list in a separate column the value for taxation purposes by use of the respective percentages indicated above. The tax was computed at the proper rate upon the amounts listed in the latter column. This new course of procedure proved most successful and resulted in an equality of taxation throughout the state not theretofore had. Succeeding reports of the Minnesota tax commission indicate that property owners made a fairer listing of the value of property as did also the assessors. As showing the effect of the operation of the classification act, it is interesting to note that the first year it was in effect the assessors' returns as to "true and full value" were considerably more than double the amount returned as such in the preceding year, while the return as to the assessed value reasonably approximated the so-called, but not actual, "true and full value" of the preceding year. In 1926 the full and true value of the taxable property in Minnesota (exclusive of moneys and credits) was returned as $5,403,544,969, while the assessed value for taxation purposes was $1,947,501,643. The average assessed value of that property represented slightly over 36½ per cent of the true and full value. Although there is not and never can be an exact equality in taxation, it is not necessary—a substantial equality is all that is required. Park v. City of Duluth, 134 Minn. 296, 159 N. W. 627; Dohs v. Holm, 152 Minn. 529, 533, 189 N. W. 418.

It is contended by the defendants that, as now found in our laws, the words "assessed value" and "assessed valuation" mean "true and full value." With this contention we cannot agree. The words, as aptly stated by the trial court, are "phrases of contrast and not identity." The language of the classification act itself forces such a conclusion. We therefore hold that the valuations upon which the ten per cent net indebtedness are to be applied and computed are the amounts contained in the second column above referred to as finally equalized and determined. We think this holding is inescapable. It is also supported by the following observations:

In nearly all of the counties of this state the salaries and clerk hire of many officers are based upon the assessed valuation of the county. Not only would a holding other than above reached very largely raise the net bonded indebtedness of Minneapolis, but it would also result in multiplying the salaries and clerk hire of many county officers from two to three times. In addition, indebtedness of many counties and other municipalities in this state and their power to raise money by taxation are definitely limited by law to certain percentages of the assessed valuation. If figured on "full and true value," there would be a several-fold increase. Attention might also be called to the revenue raised by the state from direct millage taxes. The same result would obtain as to that revenue. If taxes were imposed upon all property at its true and full value, it would result in a large and needless increase in taxes and a great and uncalled for increase in salaries and expenses, as well as a possible large increase in municipal indebtedness. The bringing about of such a condition could not have been the legislative intent, and in fact during the 15 years since the classification law was enacted no one has ever advanced such a proposition.

2. Are the outstanding auditorium bonds deductible? Acting under L. 1923, p. 16, c. 21, the city of Minneapolis, after an election so authorizing, issued and sold auditorium bonds in the sum of $2,646,000. That act empowered the city to acquire land necessary for and to construct, erect, maintain, own, operate and manage a public auditorium building. It contained the necessary authority to levy and collect taxes and to issue and sell bonds. There was authorization therein for the issuance and sale of $3,000,000 of such bonds. It was expressly provided in the act that the bonds so issued might be in excess of limitations contained in the charter of the city or in any law of the state prescribing or fixing the bonded indebtedness limit, and that the amount of such bonds should not be counted or included in the net indebtedness of the city nor in any computation of the city's outstanding indebtedness for the purpose of determining the limit of such net indebtedness. This condition still obtains unless affected by legislation enacted in 1927.

L. 1927, p. 202, c. 131, was approved April 9, 1927, and became effective from and after September 1, 1927. It was entitled: "An act relating to the incurring and payments of municipal obligations *in certain cases,* * * * and repealing the provisions of law inconsistent with this act." (Italics ours.) It was general in its terms 'and applied to "municipalities," that word being defined therein as meaning "any city of any class, village, borough, county, town or school district however organized." Subd. (D) of § 1 provides: "The words 'net debt' shall mean as to any municipality the amount remaining after deducting from its gross debt the aggregate of the principal of the following items * * * [naming them]." In this list there is no mention of bonds such as we are here considering.

If c. 131 is controlling as to the city of Minneapolis and such bonds are not deductible, then on September 1, 1927, the date of the taking effect of that act, Minneapolis had issued and sold bonds to the extent of more than $900,000 beyond the limit of its then newly authorized net indebtedness. Could the legislature have had in mind the accomplishment of such a result? We think not.

The "sorry predicament" in which Minneapolis would thus find itself would be avoided (a) if L. 1927, p. 202, c. 131, does not repeal the provisions of L. 1923, p. 16, c. 21, relating to the deductibility of auditorium bonds, or (b) if c. 131 by its terms excludes Minneapolis from the application of the act.

The legislature is presumed to know what it is doing, and unless absolutely forced to do so we cannot impute to the lawmaking body a purpose to bring about such a result. Justice Mitchell, in Gaston v. Merrian, 33 Minn. 271, 283, 22 N. W. 614, says:

"All laws are to be presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject; and it is, therefore, a reasonable conclusion that the legislature, in passing a statute, did not intend to interfere with or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable and irresistible. The court is bound to uphold the prior law, if the two acts may well subsist together."

(a) Does L. 1927, p. 202, c. 131, repeal the provisions of L. 1923, p. 16, c. 21, relating to the deductibility of the auditorium bonds? There is no express repeal by name of c. 21. There is, however, in § 11 of c. 131 this restrictive and limiting language: "The provisions of all laws pertaining to the issuance and payment of obligations that are subject to the provisions of this act as *to the issuance thereof*, in so far as the provisions of said laws are inconsistent with the provisions hereof, are hereby repealed." (Italics ours.)

L. 1923, p. 16, c. 21, was one, special in its purpose, an auditorium act, applicable only to cities of the first class and expressly permitted the deductibility of the bonds issued thereunder. C. 131 was an act, though restricted in its title, general in its nature, applying to all municipalities other than those excepted, and the words "auditorium" or "auditorium bonds" do not appear therein. There is no direct indication of a legislative intent to repeal or supersede the auditorium act. Repeals by implication are not favored. Such repeals will not be inferred; nor will a law, general in its application (such as L. 1927, p. 202, c. 131) supersede an earlier act, special in its nature (such as L. 1923, p. 16, c. 21), unless such was the manifest intention of the legislature. State ex rel. St. Paul G. L. Co. v. McCardy, 62 Minn. 509, 64 N. W. 1133; State ex rel. Lum v. Archibald, 43 Minn. 328, 45 N. W. 606; State ex rel. School Dist. No. 51 v. Bailer, 91 Minn. 186, 97 N. W. 670; Sheldon v. Padgett, 144 Minn. 141, 174 N. W. 827; State v. Anderson, 63 Minn. 208, 65 N. W. 265; Beck v. City of St. Paul, 87 Minn. 381, 92 N. W. 328; 6 Dunnell, Minn. Dig. (2 ed.) § 8927, and cases cited; Washington v. Miller, 235 U. S. 422, 35 S. Ct. 119, 59 L. ed. 295; Beal, Cardinal Rules of Legal Interpretation, p. 517, et seq; 25 R. C. L. 918, et seq.

We are of the opinion, and so hold, that L. 1927, p. 202, c. 131, does not repeal or supersede the deductibility provisions of L. 1923, p. 16, c. 21.

(b) Is Minneapolis, by the terms of c. 131, excluded from the application thereof? Minneapolis is operating under a home rule charter. The title of that act is expressly restricted to "certain cases," and also we find therein this provision:

"Nothing herein contained, however, shall be construed to change the method, if any, of computing the limit of indebtedness of any municipality as prescribed by the special law or the home rule charter under which it is organized." [§ 1.]

L. 1893, p. 333, c. 204, relating to the issuance of bonds by cities, and certain amendments thereto, were incorporated in and made a part of the home rule charter of Minneapolis upon its adoption in 1920. (C. XX.)

Chapter XV, § 10, of the charter provides:

"The bonds authorized by Section 9 of this chapter or any portion thereof, may be issued and sold by the city, notwithstanding any limitation contained in the Charter of this city or any law of this state, prescribing or fixing any limit upon the bonded indebtedness of the city, provided the issuance of said bonds will not increase the net bonded indebtedness of the city as defined in Section 1848, General Statutes, 1913, and acts amendatory thereof, to an amount in excess of ten (10) per cent of its assessed valuation."

It is therefore manifest that Minneapolis was, when c. 131 became effective, a city in which the charter provided the manner of computing the limit of indebtedness. This limit was fixed by c. XV, § 10, supra. G. S. 1913, § 1848, did not include the kind of bonds here involved in the list of deductibles in deducting net indebtedness. The legislature, however, in passing L. 1923, p. 16, c. 21, superseded the charter provision in so far as to permit such deduction. Without further statement, we think this is sufficient to indicate that Minneapolis is, to the extent of the matter here being considered, not within the operation of c. 131, and that such was the legislative intent.

3. At the same session at which c. 131 was enacted the legislature passed c. 428. The former was approved on April 9, 1927, and as already stated went into effect on September 1, 1927; and the latter was passed on April 20 and went into effect on April 23, the date of its approval. For weeks these two measures were discussed and considered by both houses of the legislature. We have hereto-

fore referred to certain restrictions in the title and body of c. 131. The title to c. 428 is:

"An act to amend Chapter 21 of the Session Laws of Minnesota ·for 1923, being an act entitled:" (here follows the exact title of said c. 21, and after that the words:) "To extend the application of said act to the construction, erection, maintenance, owning, operating and managing to improvements, repairs, enlargements and remodeling of any existing auditorium building and to acquire the land and buildings necessary for such auditorium building and any improvements, additions and enlargements thereof and the issuance of bonds by such city to defray the cost of acquiring land and buildings or and constructing, improving, repairing, remodeling, enlarging, erecting and equipping such public auditorium building in this city."

This act provides for the issuance of additional bonds in an aggregate amount not exceeding $3,000,000, and that the same shall be exempt from and shall not be counted or included in the net indebtedness of the city, or in any computation of the city's outstanding indebtedness for the purpose of determining the limit of net bonded indebtedness of the city.

Hence we have authority in L. 1923, p. 16, c. 21, for the deduction of auditorium bonds issued thereunder in computing net indebtedness, and also like authority in L. 1927, p. 616, c. 428, for the deduction of bonds that may be issued pursuant to its terms for auditorium purposes. The policy of the two legislative bodies in that regard is manifest.

It is suggested that as c. 428 became effective on April 23, it so remained and was in operation until September 1, when c. 131 went into effect. We do not think this contention is sound. Invoking again the rule that the legislature is presumed to have knowledge of both of the bills in question, it is inconceivable that there was an intent and purpose of the legislature that c. 428 should be operative for only four and a quarter months. By the terms of c. 428, before the bonds could be issued, it was necessary that such issuance should be approved by a vote of the people. Even if the

bonds were authorized at the first election held to vote thereon, it would be impossible in the short time intervening before September 1 to have plans and specifications prepared for the new improvements, steps taken toward acquiring necessary lands and structures, if any, bids advertised for, contracts let and work even begun. Then too it would be poor business judgment and a wasteful expense to issue the bonds except as they were needed to pay on the contract price as the work proceeded. Other reasons readily suggest themselves as to why such improvident purpose should not be imputed to the legislature.

There is authority for holding that L. 1927, p. 616, c. 428, is valid and not affected by c. 131 of the same session. 1 Lewis' Sutherland St. Const. (2 ed.) p. 541, in which appears the following:

"But, as between two acts, it has been held that one passed later and going into effect earlier will prevail over one passed earlier and going into effect later. Thus an act passed April 16th and in force April 21st was held to prevail over an act passed April 9th and in effect July 4th of the same year. And an act going into effect immediately has been held to prevail over an act passed before but going into effect later."

See also Dewey v. City of Des Moines, 101 Iowa, 416, 70 N. W. 605; Dowty v. Pitwood, 23 Mont. 113, 57 P. 727; State v. City of Newark, 57 N. J. L. 298, 30 A. 543; Bd. of Ed. v. Tafoya, 6 N. M. 292, 27 P. 616; 25 R. C. L. 180.

Having reached the conclusion that, in so far as the deductibility of the auditorium bonds here being considered is involved, L. 1923, p. 16, c. 21, was not repealed by L. 1927, p. 202, c. 131, and that the provisions of the latter law do not affect the question here being considered, we need not pass upon other points raised.

We hold that neither "assessed valuation" nor "assessed value" mean "the true and full value;" that the ten per cent limit we are considering is to be computed upon the valuation as finally assessed and equalized; that the auditorium bonds of Minneapolis provided for in L. 1923, p. 16, c. 21, are deductible in computing net indebtedness.

Affirmed.