## 510 GROVELAND AVENUE, INC. v. AL P. ERICKSON AND OTHERS.[1]

December 10, 1937.

No. 31,636.

*Kingman, Cross, Morley, Cant & Taylor* and *Neil M. Cronin,* for appellant.

*William S. Ervin,* Attorney General, *Matthias N. Orfield,* Deputy Attorney General, and *Frank J. Williams,* Assistant County Attorney, for respondents Al P. Erickson, as County Auditor, and Henry Voegeli, as County Treasurer, of Hennepin County.

[1]Reported in 276 N. W. 287.

*R. S. Wiggin,* City Attorney, *John F. Bonner* and *Charles A. Sawyer,* Assistant City Attorneys, and *Arthur LeSueur,* for respondents City of Minneapolis and Board of Education of City of Minneapolis.

STONE, JUSTICE.

Appeal by plaintiff from an order sustaining a general demurrer interposed to its complaint by all defendants.

The determinative questions are as to the construction and constitutionality of a part of L. 1933, c. 359, in application to a tax levy attempted by the board of education of Minneapolis, in respect to which plaintiff, suing as a taxpayer and owner of real estate in Minneapolis, seeks a declaratory judgment in accord with its theory of the case.

Under c. 18, § 6, of the Minneapolis home rule charter, the board of education (as to the status of which see State ex rel. Board of Education v. Erickson, 190 Minn. 216, 251 N. W. 519) is empowered to levy a tax for school purposes which "shall not exceed 22 mills on each dollar of the assessed valuation of the taxable property of the city as determined by the last assessment for city, state and county purposes." Plaintiff's claim is that the annual levy attempted by the board in October, 1937, of $5,960,000 is at the rate of 24.1 mills of the controlling assessed valuation, and that in consequence it is excessive and void as to $521,478, which is the excess thereof over $5,438,522, which, according to plaintiff's view, is the maximum that could be levied at the charter limit of 22 mills.

The issue arises, not so much under the charter as in respect to the application of L. 1933, c. 359. It will be helpful by way of introduction to relate some history of the controlling legislation. Until 1913, we had no statute fixing any percentage of the "true and full value" of property to control tax levies thereon. The statutory requirement then was that all property "be assessed at its true and full value in money," (which will be intended hereinafter whenever "value" is used). R. L. 1905, § 810. The statute did go on, however, to prescribe rules whereby assessors were to determine value. *Id.* (1 Mason Minn. St. 1927, § 1992). In attempt to remedy

the evils of the old system whereby, in theory only, all property was taxed at its value (see Phelps v. City of Minneapolis, 174 Minn. 509, 512, 219 N. W. 872) the legislature, by L. 1913, c. 483 (1 Mason Minn. St. 1927, § 1993) classified all property, real and personal, "for taxation purposes." Thereunder, homesteads, rural and urban, platted and unplatted, fell into class four (4) and were to be assessed at 40 per centum of value. There was a further amendment, not here material, by L. 1923, c. 140 (1 Mason Minn. St. 1927, § 1993).

The law as it now stands was fixed by the latest amendment in L. 1933, c. 359. Additional classes were thereby designated for taxation at the differing proportions of value specified. In the added categories were "class three b" (3b) and class "three c" (3c). The former included all unplatted real estate "used for the purposes of a homestead." The law directed it to be assessed at 20 per cent of value, with a proviso that any excess over $4,000 should be assessed as provided by class three (3), that is, at 33 1/3 per cent of value. Class three c (3c) included all platted real estate used for homestead purposes. It is assessed at 25 per cent of value except that any excess above $4,000 is assessed as provided for class four (4), that is, at 40 per cent of its value.

Following the clauses creating classes 3b and 3c in the law of 1933, and as the language now decisive, we have this:

"For the purpose of determining salaries of all officials based on assessed valuations and of determining tax limitations and net bonded debt limitations now established by statute or by charter, class 3b and class 3c property shall be figured at 33 1/3% and 40% of the true and full value thereof respectively."

Aside from the claim of unconstitutionality, consideration of which we postpone, the question is whether the mandate of the Minneapolis charter, limiting the annual levy by the board of education to 22 mills "on each dollar of the assessed valuation * * * as determined by the last assessment," is one of the "tax limitations" referred to in the paragraph above quoted from the 1933 law, as to which homesteads shall be figured at the stated and former

proportions. If the answer is affirmative, as we hold it to be, the involved tax levy does not transgress the charter limitation thereon of 22 mills on the dollar.

■ For a long time it has been customary in this state by general legislation (by special laws prior to 1891 when special legislation was barred by constitutional amendment, Minn. Const. art. 4, § 33) to fix official salaries in municipal subdivisions such as counties in respect to their assessed valuation. By the same yardstick, the limit of general bonded indebtedness of municipalities has been prescribed. "Tax limitations" have been fixed by statute at a maximum per capita, by a "millage rate" (a common method) and possibly by other standards. In any view, the charter provision here invoked is a tax limitation. Moreover, it is fixed "by charter." It is significant that the 1933 law did not stop with a designation generally of "tax limitations" as one of the things in respect to which homesteads should "be figured" as stated. It went on to emphasize that tax limitations as well as salaries and limits of bonded indebtedness were included, whether "established by statute or by charter."

Counsel for plaintiff are correct in their insistence that the charter limitation is to be applied to the "last assessed valuation," of which there was but one for all purposes, city, county, and state taxation. They are accurate also in asserting that the statute does not amend the charter. All the former does, for present purposes, is to declare how the last assessed valuation, insofar as it includes homesteads, shall be "figured" in applying all applicable "tax limitations." That is but a declaration of general law working on tax limitations throughout the state. It has a plain, or at worst, an ascertainable, meaning, which is that while for the general purpose of levying taxes on homesteads they shall be assessed at the new and reduced rates, they shall continue to be "figured" at the indicated rates for the special purposes stated, including that of "determining tax limitations."

The issue is not settled by anything adjudicated in Sutton v. Board of Education, 197 Minn. 125, 130, 266 N. W. 447. But it is at least significant that in that case we considered a maximum

millage rate, fixed by charter for school taxation, as one of the tax limitations as to which "the reduction in homestead valuation" made by L. 1933, c. 359, "is disregarded" by the very terms of that law.

Needless to say, the functioning of all executive taxing authority is subject to such overhauling from time to time by the legislative power. All that was done by the law of 1933 was to declare new and reduced proportions of value whereon to tax homesteads but to preserve former and higher rates for the figuring, that is the application, of tax limitations. In that view, the levy made by the board of education of Minneapolis, which is here under attack, will not exceed the maximum rate of 22 mills on the last assessed valuation, "figured" in respect to homesteads on the values the statute says it must be.

The argument for plaintiff which may come nearest the mark, but yet misses, is that the provision of the 1933 law "in regard to tax limitations was intended to be operative *only* in those situations where it is necessary to look to the amount of assessed valuation within a  *  *  *  taxing district in order to determine whether such  *  *  *  taxing district shall come within a certain tax limitation." They cite as typical, *inter alia,* L. 1933, c. 281, fixing the salaries of certain county officials. It applies only to counties having 100 or more townships "and an assessed valuation including moneys and credits of not less than $4,000,000.00 nor more than $6,000,000.00." Explicitly, at least, that is not as plainly a tax limitation as the bar of the Minneapolis charter against a school levy in excess of 22 mills. To allow the indicated conclusion it would be necessary to hold that the general statutory inclusion, for the purposes stated, of all tax limitations, carries with it, although not expressed, an exception of all such limitations expressed in terms of a millage rate. No such implication is possible. To adopt the conclusion by inference rather than implication would be alteration rather than construction of the statute. By so much, it would be a judicial trespass on the domain of the legislature.

The title of the 1933 law is this: "An act to amend Mason's Minnesota Statutes of 1927, Section 1993, relating to classifications

of property including homesteads." So far as argument proceeds on the assumption that the law effects amendment of the charter, and so goes beyond the most far-flung boundaries permitted by the title (Minn. Const. art. 4, § 27), it is negatived by our conclusion that no amendment of the charter was intended or effected.

But, the argument for plaintiff proceeds, the construction of L. 1933, c. 359, in the respect now controlling, adopted below and confirmed here, renders "the provision in question contrary to Art. 9, § 1, of the Minnesota constitution, which provides that all taxes shall be uniform upon the same class of subjects." Under no concept of the uniformity constitutionallly required in taxation can we sustain such a thesis. The classification is between homesteads and all other property, especially other real estate. Both the fixing of higher rates of valuation of homesteads for the stated purposes and reduced rates for their taxation operate uniformly on their subject matter. The taxes to be collected under the involved levy will operate uniformly upon each class of property. The legislature is within its power in saying that for general purposes all homesteads are to be valued for taxation at new and reduced rates, and simultaneously enacting that for the special purpose of figuring tax limitations former or higher rates shall control.

There is no occasion for further discussion, with or without shelter of authority, of the criteria of uniformity. They recently had consideration here in Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102, sustaining the state income tax law (L. 1933, c. 405). See also Apartment Operators Assn. v. City of Minneapolis, 191 Minn. 365, 254 N. W. 443, maintaining the statute now in question (L. 1933, c. 359) against challenge on the ground that, in its favoring treatment of homesteads, it violated the requirement of uniformity.

The desire of plaintiff, as frankly stated by counsel, is for a "break" for taxpayers. Under prevailing conditions, for intelligence to listen to such a plea with other than sympathy is impossible. But it is constitutionally forbidden to the judicial department, save in the infrequent and exceptional lawsuit, to lighten the ambition-maiming, progress-retarding, and youth-handicapping, but still increasing, load of taxation. Such pleas must be addressed

to the appropriating and spending departments. The remedy, if and when one is needed and is not forthcoming from legislative prescription and executive dispensary, must be prescribed and administered by the people themselves.

Order affirmed.