500

CHARLES E. JOHANSON v. INDEPENDENT SCHOOL
DISTRICT NO. 23, ANOKA COUNTY, AND OTHERS.[1]

November 18, 1955.

No. 36,748.

*Hall, Smith & Hedlund,* for appellants.
*Charles B. Howard,* for respondent.

KNUTSON, JUSTICE.

Independent School District No. 23 of Anoka County is a public school corporation organized under the laws of this state. The school district has a net debt of $350,479.19. The assessed value of all taxable property is conceded to be as follows:

Homesteads classified as 3b and assessed at 20 percent, $ 4,991
Homesteads classified as 3 and assessed at 33⅓ percent, 2,496
Homesteads classified as 3c and assessed at 25 percent, 436,052
Homesteads classified as 4 and assessed at 40 percent, 10,272
Nonhomesteads assessed at 33⅓ percent, 29,957

[1]Reported in 73 N. W. (2d) 126.

| | |
|---|---:|
| Nonhomesteads assessed at 40 percent, | $ 96,359 |
| Homesteads of veterans classified as 3cc, | None |
| | |
| Total real estate, | $580,127 |
| Personal property, | 64,716 |
| | |
| Total value, | $644,843 |

If all homestead property in the district were to be assessed at full and true value, the assessed value of all property would amount to $1,993,362. If all rural real estate used as homesteads were assessed at 33⅓ percent of full and true value and urban real estate used as homesteads were assessed at 40 percent of full and true value, the assessed value would be $909,800.

Purporting to act under a construction of L. 1955, c. 656, which would permit a determination of assessed value based on the full and true value of all real estate used for homestead purposes, the district submitted to its legal voters the following question:

"Shall Independent School District No. 23 of Anoka County issue its negotiable coupon bonds in the amount of not to exceed $400,000 or such part thereof as may be issued within the debt limit of the district for the purpose of providing money for the construction, furnishing and equipping of an addition to the school building?"

One hundred ninety votes were cast in favor of and nine against the proposal. The district now proposes to sell $400,000 of its bonds if not enjoined.

Thereafter, this action was commenced by plaintiff seeking a declaratory judgment determining the proper construction of L. 1955, c. 656, and for injunctive relief. The trial court found that under M. S. A. 475.53, as modified by c. 656, the assessed valuation for the purpose of determining the debt limitation of the school district should be determined by assessing rural real estate used for homesteads at 33⅓ percent and urban real estate used for homesteads at 40 percent of full and true value and that the total assessed value for determining debt limitation amounted to $909,800.

This appeal is from an order granting an injunction restraining the school district and its officers from issuing bonds in such amount that the net debt of the school district will exceed 50 percent of the assessed value as so determined.

The appeal involves a construction of § 475.53, as amended by L. 1955, c. 656.

Unfortunately, we have had brief on only one side of this case. After prevailing in the trial court, plaintiff has chosen to file no brief here. Instead, it would seem from oral argument of his counsel that both parties desire our stamp of approval on the school district bonds so that they can be sold.

An examination of the statutes preceding the one now under consideration may be of some help in determining legislative intent.

Prior to 1913 our statutes required all real property to be assessed at its full and true value. R. L. 1905, § 810. At that time, theoretically at least, assessed value was synonymous with true and full value. The debt-limitation statute, which excluded school districts, was based on a percentage of *assessed value*. R. L. 1905, § 780. "Assessed value" was defined by § 778 as follows:

"The words 'assessed value,' as used herein, shall mean the latest valuation for purposes of taxation, as finally equalized, of all property taxable within the municipality referred to."

In defiance of § 810, the practice had grown up throughout the state of assessing property far below the full and true value. The difference between different taxing districts ranged from 25 to 50 percent.[2]

In order to equalize the taxing basis throughout the state, the legislature enacted L. 1913, c. 483, under which all property, real and personal, was classified for taxation purposes.[3] Unplatted real estate, homestead and nonhomestead alike, fell into class 3 and was to be assessed at 33⅓ percent of full and true value. Platted real estate, homestead and nonhomestead alike, fell into class 4 and was to be assessed at 40 percent of its true and full value.

---

[2]Phelps v. City of Minneapolis, 174 Minn. 509, 219 N. W. 872; Report of Minnesota Tax Comm. 1914, p. 17, et seq.; Id. 1916, p. 25, et seq.

[3]510 Groveland Avenue, Inc. v. Erickson, 201 Minn. 381, 276 N. W. 287.

Since that time assessed value has had a meaning distinct from full and true value. In Phelps v. City of Minneapolis, 174 Minn. 509, 513, 219 N. W. 872, 874, we said:

"It is contended by the defendants that, as now found in our laws, the words 'assessed value' and 'assessed valuation' mean 'true and full value.' With this contention we cannot agree. The words, as aptly stated by the trial court, are 'phrases of contrast and not identity.' "

L. 1913, c. 483 (G. S. 1913, § 1988), was amended by L. 1923, c. 140, but the amendment did not affect real estate. Otherwise it remained as enacted until the passage of L. 1933, c. 359. By that act homesteads were first classified so as to be assessed at a percentage of the true and full value lower than nonhomestead property, up to a certain specified limit. As far as here material, it reads:

"Class 3b. All unplatted real estate, * * * which is used for the purposes of a homestead, shall constitute class three 'b' (3b) and shall be valued and assessed at twenty (20) per cent of the true and full value thereof. Provided, if the true and full value is in excess of the sum of $4,000.00, the amount in excess of said sum shall be valued and assessed as provided for by class three (3) hereof.

"All platted real estate, * * * which is used for the purposes of a homestead, shall constitute class 3c and shall be valued and assessed at twenty-five (25) per cent of the true and full value thereof. Provided, if the true and full value is in excess of the sum of $4,000.00, the amount in excess of said sum shall be valued and assessed as provided for by class four (4) hereof."

Class 3 was to be assessed at 33⅓ percent and class 4 at 40 percent of full and true value. The result was that unplatted real estate used as homesteads, above the true value of $4,000, was assessed as before at 33⅓ percent, and, similarly, platted homesteads, above the same figure, were also assessed as before at 40 percent of the full and true value. In other words, the reduction applied only to the first $4,000 of value of the homesteads of either class.

504

While this act, now M. S. A. 273.13, has been amended several times,[4] the portion thereof involved in this case has remained the same as far as the rate or percentage of true and full value to be applied in determining assessed value is concerned.

The reduction in the percentage of full and true value which was to be used in determining the assessed value of homesteads was of little importance for debt-limitation purposes prior to 1949. The original act (L. 1933, c. 359) contained the following provision:

"For the purpose of determining salaries of all officials based on assessed valuations and of determining tax limitations *and net bonded debt limitations* now established by statute or by charter, class 3b and class 3c property shall be figured at 33⅓% and 40% of the true and full value thereof respectively." (Italics supplied.)

Under that provision, the same percentage of full and true value was used for determining assessed value of homestead and non-homestead property as far as it affected a determination of the net bonded debt limitation, as well as tax limitations and salaries. This provision was carried along in the several amendments of the statute[5] until 1949. It was amended by L. 1949, c. 723, to read as follows:

"Subd. 7a. For the purpose of determining salaries of all officials based on assessed valuations and of determining tax limitations now established by statute or by charter, class 3b and class 3c property shall be figured at 33-⅓ per cent and 40 per cent of the full and true value thereof, respectively."

The words "and net bonded debt limitations" were dropped from the previous provision of the statute.

Thereafter assessed valuation of homesteads was based on the percentage of the true and full value provided by the statute for the purpose of determining net bonded indebtedness, as well as for

[4]L. 1937, c. 365; Ex. Sess. L. 1937, c. 86; L. 1939, c. 48; L. 1941, c. 436; L. 1941, c. 437; L. 1941, c. 438; L. 1943, c. 172; L. 1943, c. 648; L. 1947, c. 537; L. 1949, c. 723; L. 1951, c. 510; L. 1953, c. 358; L. 1953, c. 400; L. 1953, c. 747.

[5]See, for instance, L. 1943, c. 172; L. 1945, c. 527; M. S. A. 1945, § 273.13, subd. 7.

determining the tax levy. That is how the matter stood when the legislature enacted L. 1955, c. 656, which reads as follows:

"Section 1. Minnesota Statutes 1953, Section 475.53, Subdivision 4, is amended to read:

"Subd. 4. Except as otherwise provided in sections 475.51 to 475.75, no school district other than those covered by subdivision 5, shall be subject to a net debt in excess of 50 percent of the last assessed value of all taxable property therein; provided however, *in determining the assessed value* of all taxable property all real estate used as a homestead shall be computed without regard to the reduction in rate provided by Minnesota Statutes 1953, Section 273.13." (Italics supplied.)

It is significant that the legislature saw fit to use the words "in determining the assessed value." It did not say "in determining value" or "true and full value," as defendants would have us believe. Keeping in mind that since 1913 "assessed value" has a definite and distinct meaning from "true and full value," how can it be said that the legislature meant to use true and full value when it said "in determining the assessed value"? It seems clear to us that what the legislature intended to do was to restore the law as it existed from 1933 to 1949 and thereby to determine assessed value of homesteads and nonhomesteads on the same basis for the purpose of fixing net debt limitation of school districts. That already was the law in determining salaries of officials and tax limitations under M. S. A. 273.13, subd. 7a. That part of the original act passed in 1933 had never been changed. Our position is fortified by the fact that the legislature has based our school district debt-limitation statutes on assessed valuation from the very beginning. Not once since assessed value came to have a meaning separate and distinct from full and true value in 1913 has the legislature ever based such debt limitation on full and true value.[6] In addition to that, assessed value is defined for the purposes of M. S. A. c. 475, in § 475.51, subd. 5, as follows:

[6]See, for instance, Mason St. 1927, § 1938-4; M. S. A. 1945, § 475.23; M. S. A. 475.53.

" 'Assessed value' means the latest valuation for purposes of taxation, as finally equalized, of all property taxable within the municipality."

Under this definition, how can the words of the legislature "in determining the *assessed value*" (italics supplied) mean "in determining value" or "true and full value"?

Even if we were to concede that the legislature meant something else when it said "in determining the assessed value," we could not arrive at the figures defendants contend should be used. Prior to the enactment of L. 1933, c. 359, which is the source of a reduction in assessment of homesteads in M. S. A. 273.13, all unplatted land, homestead and nonhomestead alike, fell into class 3 of the then existing statute, the assessed value of which was 33⅓ percent of the full and true value. Mason St. 1927, § 1993. All other real estate, which included all platted land, homestead and nonhomestead alike, fell into class 4, and its assessed value was 40 percent of its full and true value. L. 1933, c. 359, now M. S. A. 273.13, reduced the assessed value of only the first $4,000 of rural homesteads from 33⅓ percent to 20 percent of the full and true value. The assessed value of the remainder above the first $4,000 in value was still 33⅓ percent of the full and true value. Similarly, the assessed value of platted (urban) homesteads up to $4,000 was reduced from 40 percent to 25 percent of the full and true value. All in excess of the first $4,000 in value remained as it was without reduction. The inevitable result is that the *reduction,* whatever it is called, affected only the first $4,000 of either rural or urban homesteads. If, therefore, we were to adopt defendants' theory, we could take the true and full value of only the first $4,000 of homesteads, and the balance, not having been subject to any reduction by M. S. A. 273.13, still would have to be figured at 33⅓ and 40 percent respectively.

Defendants would have us construe the phrase "reduction in rate," as used in L. 1955, c. 656, to mean "reduction in value." While use of this phrase may have been unfortunate, it is probable that it was taken from the language in our decision in 510 Groveland Avenue,

Inc. v. Erickson, 201 Minn. 381, 384, 276 N. W. 287, 289, where we said:

"* * * It [L. 1933, c. 359] has a plain, or at worst, an ascertainable, meaning, which is that while for the general purpose of levying taxes on homesteads they shall be assessed at the *new and reduced rates,* they shall continue to be 'figured' at the *indicated rates* for the special purposes stated, including that of 'determining tax limitations.'" (Italics supplied.)

It should not be difficult to ascertain that we used the word "rates" to mean "percentage of true and full value." That was the only thing that was reduced. At the time the above case was decided the exception we dealt with included net debt limitation as well as tax limitation. The above language was then as applicable to the one as to the other. The term "reduction in rate" can mean only a reduction from what it was before in determining assessed value. As so used, "rate" can only mean "percentage."

The reduction in percentage having applied only to the first $4,000 in value, it must follow that the true and full value cannot be used beyond that reduction, no matter what other theory or reasoning is applied. If the legislature had intended to completely remove the lid from homestead property, all it had to do was to say that, in determining value, true and full value of homesteads should be used. It did not do so. It said "in determining the *assessed* value." (Italics supplied.)

The result defendants urge us to reach would bring about an absurd situation throughout the state. It would mean that, in the older and more heavily populated urban school districts where all or nearly all land is occupied as homesteads, the districts could have a net bonded indebtedness of 50 percent of the full and true value of all, or nearly all, real estate in the district, whereas in a growing school district, where there still is much undeveloped land, they could have a net debt based on 50 percent of the full and true value of those lots on which a house had been erected and which was used as a homestead but that on all other undeveloped land the net debt must be limited to 50 percent of the assessed valuation consisting of only 40 percent

of the full and true value. Similarly, in rural districts, the older and more heavily populated areas of the state and those having farms of comparatively small size could have a much higher base on which to determine permissible net debt than areas more sparsely settled, simply because there would be more homesteads in one place than in another. We do not believe that the legislature intended any such result.

It seems to us that what we are asked to do here, without benefit of argument on more than one side of the case, is to construe this statute so as to help one school district, without considering the effect it well may have on all school districts in the state, on the doubtful theory that the legislature, when it next assembles, can close the flood gates before the whole area is inundated. At best, this case is an attempt to have this court validate an issue of bonds which cannot be issued unless we construe this statute in a way which seems to us to be contrary to all standards of statutory construction and to the legislative intent which has been manifested throughout the history of these debt-limitation statutes. For these reasons we are convinced that the trial court arrived at the proper result.

Affirmed.